# JOHN NORRELL ARMS, INC. *v.* Curtis HIGGINS

97-610                                                962 S.W.2d 801

Supreme Court of Arkansas
Opinion delivered February 26, 1998

*Joel Taylor,* for appellant.

*Kemp, Duckett, Spradley & Curry,* by: *James M. Duckett,* for appellee.

ROBERT L. BROWN, Justice. This appeal by appellant John Norrell Arms, Inc., arises out of a dismissal of Norrell Arms's complaint against appellee Curtis Higgins due to lack of personal jurisdiction by the trial court over Higgins. Norrell Arms contends on appeal that the trial court erred in dismissing its complaint. We affirm the dismissal.

The facts leading up to the dismissal are these. Higgins is a resident of the State of Oklahoma and sole shareholder of an Oklahoma corporation, S & H Arms of Oklahoma, Inc. Norrell Arms is an Arkansas corporation with its principal place of business in Little Rock. A third person not a party to this action is Thomas Seslar, a resident of Carroll County, who was doing business as S & H Arms Manufacturing Company, apparently a sole proprietorship, at the time of the events in question.

On March 28, 1995, an Oklahoma default judgment in favor of Higgins and against Seslar was filed in Carroll County. In that judgment, the Oklahoma trial court found that Higgins and Seslar had been in business together as a fifty-fifty partnership engaged in the manufacture and sale of firearms and that Seslar took certain inventory which belonged to Higgins when the partnership was dissolved. That inventory included 330 autosears, which are parts that convert a semi-automatic firearm into a machine gun. The judgment provided that Seslar should return the 330 autosears, as

well as other inventory to Higgins, and that Seslar should pay Higgins $15,776.30 in attorney fees and $82,500.00 for lost sales.

On October 6, 1995, a writ of execution was issued to the Sheriff of Carroll County to pick up "Firearms, autosears . . . and all other property of the Defendant, Thomas Seslar." On October 14, 1995, the Sheriff issued his return showing that property of Seslar had been seized, and that return was filed on December 11, 1995.

On October 29, 1996, Norrell Arms sued Higgins in Pulaski County Chancery Court seeking declaration of ownership of 60 Ruger 1022 autosears for which Norrell Arms claimed it had paid Seslar $18,500. Norrell Arms further claimed that the 60 autosears were part of the 330 autosears referenced as inventory in the Higgins judgment taken against Seslar. According to allegations in the Norrell Arms complaint, Seslar was incarcerated in federal prison. For its second claim, Norrell Arms alleged that Higgins had tortiously interfered with its contract to buy the 60 autosears from Seslar by registering his Oklahoma judgment in Arkansas and prayed for compensatory and punitive damages.

Higgins entered a special appearance in Pulaski County Chancery Court to contest personal jurisdiction and subject-matter jurisdiction as well. Discovery ensued, and the trial court conducted a hearing in which Higgins and John Norrell testified. The trial court concluded that it had no personal jurisdiction over Higgins. In reaching that conclusion, the trial court made these findings in its order:

- The whereabouts of the autosears at issue is unknown, except they may be in Oklahoma.
- Only 36 of the autosears Norrell Arms purchased from Seslar were involved in the Higgins judgment.
- Higgins has never done business in Arkansas or advertised in any magazine within Arkansas or owned property in Arkansas.
- Higgins incorporated S & H Arms of Oklahoma, Inc., in Oklahoma, but the corporation has never been registered in

Arkansas.[1] The corporation has no agent for service in Arkansas or employees in the state.

- S & H Arms of Oklahoma, Inc., has done business in Arkansas through the mail and U.P.S. but has not initiated calls to people in Arkansas.
- Over the past 3 years, S & H Arms of Oklahoma, Inc., has derived between $10,000 and $15,000 in business income from Arkansas. The corporation's annual gross income is $100,000 to $150,000.
- There is insufficient proof that S & H Arms of Oklahoma, Inc., is an alter ego of Higgins.

The trial court then dismissed Norrell Arms's complaint.

Norrell Arms maintains on appeal that the trial court erred in its findings and was wrong in concluding that it lacked personal jurisdiction over Higgins. We disagree.

■ Under the state's "long arm" statute, Arkansas courts may assert *in personam* jurisdiction over a nonresident party:

B. PERSONAL JURISDICTION. The courts of this state shall have personal jurisdiction of all persons, and all causes of action or claims for relief, to the maximum extent permitted by the due process of law clause of the Fourteenth Amendment of the United States Constitution.

Ark. Code Ann. § 16-4-101(B) (Supp. 1997).

■ The U.S. Supreme Court has held that in order for state courts to maintain personal jurisdiction over a nonresident person under the Due Process Clause of the Fourteenth Amendment, a party must satisfy two prongs. The party, first, must show that the nonresident has had sufficient "minimum contacts" with this state and, secondly, must show that the court's exercise of jurisdiction would not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In this same vein, the Court has held that personal jurisdiction over a nonresident defendant generally exists when the defendant's contacts with the state are continuous, systematic, and substantial. *Helicopteros Naciaonales de Columbia, S.A.*

---

[1] The trial court, in its order, referred to this corporation as S & H Arms, Inc.

*v. Hall*, 466 U.S. 408 (1984). *See also Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952). It is essential for a finding of personal jurisdiction that there be some act by which the defendant purposefully avails himself or herself of the privilege of conducting business in the forum state. *Hanson v. Denckla*, 357 U.S. 235 (1957). Moreover, the contacts should be such where a defendant would have a reasonable anticipation that he or she would be haled into court in that state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980).

■ The Eighth Circuit Court of Appeals has established a five-factor test for determining the sufficiency of a defendant's contacts with the forum state so as to result in personal jurisdiction:

> (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties.

*Burlington Industries, Inc. v. Maples Industries, Inc.* 97 F.3d 1100 (8th Cir. 1996). *See also Glenn v. Student Loan Guar. Found.*, 53 Ark. App. 132, 920 S.W.2d 500 (1996). We agree with the Eighth Circuit and our court of appeals that these factors are helpful in the minimum-contact analysis.

■ Based on the facts asserted in Norrell Arms's complaint and the testimony of witnesses, it is clear that the only contact that Higgins had with Arkansas prior to the Norrell Arms complaint was the filing of an Oklahoma judgment against an Arkansas resident (Seslar) and the issuance of a writ of execution based on that judgment. We do not believe that such brief encounters with the State for the purpose of enforcing a judgment are the type of continuous, systematic, and substantial contacts envisioned by the U.S. Supreme Court to satisfy due process considerations. *See Helicopteros Naciaonales de Columbia, S.A. v. Hall, supra.*

■ But Norrell Arms goes further and urges that S & H Arms of Oklahoma, Inc., is the alter ego of Higgins and that irrespective of Higgins's slight connection with the State, the corporation has had sufficient contacts with Arkansas which should subject its sole shareholder to the jurisdiction of our courts. As an

initial matter, we cannot say that the trial court clearly erred in finding that the proof submitted was insufficient to establish the corporation as Higgins's alter ego. *See* Ark. R. Civ. P. 52(a). *See also Rano v. SIPA Press, Inc.*, 987 F.2d 580 (9th Cir. 1993). But even assuming alter ego status, we do not agree that the corporation's contacts with Arkansas are sufficient to justify personal jurisdiction over Higgins.

■ Our conclusion appears to comport with the holdings of analogous cases. For example, in the *Helicopteros* case, the Court refused to hold that personal jurisdiction existed over a defendant corporation even though a representative of that corporation had actually traveled to the forum state to negotiate a contract for the sale of helicopters and had sent people to the forum state for training. *See Helicopteros Naciaonales de Columbia, S.A. v. Hall, supra*. In addition, this court has declined to affirm personal jurisdiction over a Texas lawyer who represented a client from Arkansas. *See Marchant v. Peeples*, 274 Ark. 233, 623 S.W.2d 523 (1981). In *Marchant*, we said:

> The undisputed facts are that Peeples is a Texas lawyer licensed only to practice in Texas. He has had no contacts in Arkansas, except with Mrs. Marchant, and those have been by telephone or mail. He has not solicited any business in this state nor provided any services in this state. He did not initiate contact with Mrs. Marchant.

*Id.* at 234. And, finally, we agree with the reasoning of the court of appeals, which held that "the use of arteries of interstate mail and banking facilities, standing alone, is insufficient to satisfy due process in asserting long-arm jurisdiction over a nonresident." *Glenn v. Student Loan Guar. Found.*, 53 Ark. App. at 134, 920 S.W.2d at 501.

■ As the trial court found in its order, S & H Arms of Oklahoma, Inc., is not registered in Arkansas. It has no employees here. It has no agent for service in Arkansas. And it has never initiated contact with people in Arkansas. The only contact that S & H Arms of Oklahoma, Inc., has had with this state has been sales to Arkansas residents, set in motion by Arkansas residents and merchandise delivered to Arkansas residents by mail or UPS.

These contacts are manifestly insufficient to warrant general personal jurisdiction over S & H Arms of Oklahoma, Inc., much less over Higgins.

We are aware that the U.S. Supreme Court has found in certain instances that personal jurisdiction over a nonresident defendant did not violate due process, even though the defendant had had only one contact with the forum state. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985); *McGee v. International Life Ins. Co.,* 355 U.S. 220 (1957). In *Burger King,* the Court held that specific personal jurisdiction is applicable when the defendant has purposefully established a contact with the forum state and the litigation results from alleged injuries that arise out of or are related to that contact. In the instant case, Norrell Arms contends that its complaint is related to and arises out of Higgins's contacts with this State, which are the registration of his foreign judgment and his attempt to collect on that judgment.

In response, Higgins cites this court to one case that, he contends, is factually similar to the instant case, *Frasca v. Frasca,* 330 S.E.2d 889 (Ga. 1985). In *Frasca,* the Georgia Supreme Court refused to subject a nonresident to jurisdiction based solely on the registration of a New York divorce decree in Georgia. The Georgia Supreme Court concluded that the registration of a judgment did not constitute the transaction of business as contemplated by Georgia's "long arm" statute. Because the Georgia decision appears to have been bottomed on a "transaction of business" rationale under Georgia's statute as opposed to a "minimum contacts" examination, it does not appear to be particularly helpful in deciding this case.

█ Norrell Arms makes two claims to support its theory that its complaint against Higgins arises out of the registration of Higgins's judgment against Seslar. First, Norrell Arms maintains that this lawsuit is related to the Higgins judgment because the judgment is based on the same property that Norrell Arms claims to have purchased from Seslar. Norrell Arms argues briefly, as a second proposition, that jurisdiction should obtain in Arkansas because when Higgins registered the judgment, he tortiously interfered with Norrell Arms's contract to purchase the autosears.

He cites no authority to support either claim, and we are not persuaded by the arguments. If the registration of a foreign judgment alone is sufficient contact with a forum state, then every person who has ever registered a judgment in Arkansas is subject to suit in this State by any person claiming to have an interest in that property. This would be so, according to Norrell Arms's reasoning, even when the claim is by a third party not involved in the registered judgment and even when the property at issue is no where to be found. That goes too far in our judgment and, again, Norrell Arms cites us to no case to support its contention.

■ There is a policy consideration in all of this which is important to our analysis. The State of Arkansas must give full faith and credit to foreign judgments under the U.S. Constitution. U.S. Const. art. 4, § 1. *See also* Ark. Code Ann. § 16-66-602 (Supp. 1995). Subjecting those like Higgins who seek to enforce a foreign judgment in Arkansas to lawsuits by third parties when the property at issue may not even be located in Arkansas could well impede this basic constitutional principle.

■ We hold that the trial court did not clearly err in finding that Higgins did not have minimum contacts with the State of Arkansas. *See* Rule 52(a). *See also Rano v. SIPA Press, Inc., supra.* We further hold that the trial court correctly concluded, based on its findings, that it lacked personal jurisdiction over Higgins. Because we decide this matter based on the first prong of the *International Shoe* test, there is no need for us to examine the second prong of fair play and substantial justice.

Affirmed.