69 S.W.3d 881 (2002)
76 Ark.App. 505
J & V RESTAURANT SUPPLY & REFRIGERATION, INC.,
v.
SUPREME FIXTURE COMPANY.
No. CA 01-687.
Court of Appeals of Arkansas, Division III.
March 6, 2002.
*883 Williams & Anderson, LLP, by Stephen B. Niswanger, Little Rock, for appellant.
Boswell, Tucker & Brewster, by Dennis J. Davis, Bryant, for appellee.
JOSEPHINE LINKER HART, Judge.
J & V Restaurant Supply & Refrigeration, Inc. (J & V), appeals from a judgment awarding appellee Supreme Fixture Co., Inc., an Arkansas corporation, damages in the amount of $30,638. Appellant argues that the circuit court erred by finding that it was in default and had waived its defense of lack of personal jurisdiction; in rejecting its accord and satisfaction defense; and in denying its request for an enlargement of time within which to file a motion to dismiss. We affirm.
J & V, a Montana corporation that sells and installs kitchen equipment, has never had an office in Arkansas. Supreme Fixture, an Arkansas corporation, manufactures custom-built kitchen equipment in *884 Little Rock. J & V, as subcontractor under the project's general contractor, J.E. Dunn, solicited quotes from kitchen equipment suppliers preparatory to bidding on the construction of a prison in Montana. In November 1998, J & V forwarded by facsimile a request for a quotation to Supreme Fixture. Supreme Fixture, by facsimile and mail, returned its quotation. After J & V was awarded the subcontract, using Supreme Fixture's bid, J & V sent by facsimile a purchase order totaling $31,808 to Supreme Fixture. The purchase order provided specifications for the specially designed equipment and required J & V to take delivery of the equipment in Little Rock. Between February and June, J & V made some modifications to the specifications, which necessitated Supreme Fixture's modifying its drawings and prices. In July 1999, Supreme Fixture and J & V entered into an additional agreement detailed in a new purchase order providing that J & V would pay an extra $4,000 to Supreme Fixture for delivery of the equipment to the construction location in Montana and for on-site welding services.
Originally, J & V had provided Supreme Fixture with a projected completion date of August 20. However, in mid-July, J & V informed Supreme Fixture for the first time that, unless all of the equipment was installed by July 31, they would be fined $5,000 per day after that date. In order to meet the new deadline, Supreme Fixture entered into a separate agreement with J.E. Dunn, the general contractor, to install the equipment by July 31 for an additional expediting fee of $28,000. Supreme Fixture met the new deadline and received $28,000 from J.E. Dunn. Later, Supreme Fixture learned that J.E. Dunn had subtracted that sum from its payment to J & V. Supreme Fixture then billed J & V for $35,550. In making payment, J & V subtracted $478 in other adjustments and the $28,000 paid by J.E. Dunn. J & V sent Supreme Fixture checks for $7,022 and $1,890. According to Supreme Fixture, J & V still owed $30,638 on the purchase order; however, J & V refused to pay Supreme Fixture.
Supreme Fixture sued J & V for breach of contract, and J & V's registered agent received the summons and complaint on May 22, 2000. On June 22, 2000, thirty-one days after service, J & V filed a motion for a one-day extension within which to file a motion to dismiss. J & V's attorney stated that J & V had first contacted him about filing an answer on its behalf in the early afternoon of June 21, 2000, which was the answer's due date. The attorney stated that, although he had believed that he could complete the motion to dismiss, the brief, and the accompanying affidavit in time, he was unable to do so. On June 22, J & V also filed a motion to dismiss Supreme Fixture's complaint on the ground that J & V's contacts with the state of Arkansas did not meet the constitutionally required minimum for the courts of Arkansas to assert personal jurisdiction.
At the hearing on J & V's motions, J & V's attorney stated that the clerk's office was closed when he attempted to file the motion to dismiss on June 21, having missed the filing deadline by only a few minutes. Carl Hampel, a salesman and chief estimator for Supreme Fixture, testified that Supreme Fixture is a specifications supplier for the owner of the prison and that J & V had called Supreme Fixture and asked if it could help J & V become a supplier for the project. He said that Supreme Fixture helped J & V obtain the necessary approval which qualified it to bid on the job. Supreme Fixture asked and obtained from the project's food-service consultant a set of plans for J & V. He testified that, after J & V supplied Supreme Fixture with the specifications, he *885 provided a quote to J & V. Subsequently, J & V notified him that its bid had been accepted and sent Supreme Fixture a purchase order.
When Supreme Fixture received the order, it began preparing the customized shop drawings. Carl Hampel testified that the equipment was to be picked up by J & V and that Supreme Fixture was not obligated to deliver the equipment to Montana. However, during the manufacturing process, he had daily contacts by telephone and by facsimile with Steve Osmers, an employee of J & V, and during the building process, modifications required him to resubmit prices and drawings. He stated that, towards the end of the production process, J & V told him that it could not pick up the equipment or do the field welding in Montana but agreed to pay Supreme Fixture an additional amount for those services. The parties entered into an additional agreement, and J & V sent Supreme Fixture a separate purchase order reflecting those changes. According to Carl Hampel, ninety percent of the contract was performed in Arkansas.
The circuit judge found that J & V was properly served with the summons and complaint but failed to file a timely responsive pleading. He determined that J & V, by failing to file its motion to dismiss for lack of personal jurisdiction within thirty days after service, had waived its right to assert a lack of jurisdiction of the person. He also found that J & V had failed to demonstrate that it had, under Arkansas Rule of Civil Procedure 6(b)(2), cause for an enlargement of the response time.
At the hearing on damages, John Hampel, the president and chief executive officer of Supreme Fixture, testified that Supreme Fixture had received two checks from J & V, leaving a balance due of $30,638. Referring to Supreme Fixture's accounts receivable statement, he said that the phrase "Less 28,000 Dunn" indicated that J & V must have put a notation to that effect on its check or in an accompanying letter. He said that the payment of $28,000 from J.E. Dunn, the general contractor, was for the separate contract with Supreme Fixture to meet the new deadline of July 31. He emphasized that it was not paid in connection with the fabrication or delivery of the equipment covered by the original purchase order.
Carl Hampel also testified that Supreme Fixture did not receive the final drawings from J & V until June 23 and that, before that date, it could not fulfill the contract. Explaining the time line, Carl Hampel said it normally would take between six and eight weeks to produce the order. Further, based on J & V's failure to inform him until July 7 that the project had to be completely finished by the end of July, he told Mr. Osmers that Supreme Fixture could not meet the new and earlier deadline. After that, J.E. Dunn contacted him about entering into a separate contract to stop production on Supreme Fixture's other projects and to focus entirely on this job. He also said that Supreme Fixture's $28,000 fee from J.E. Dunn was an additional expediting fee and that the expediting fee was not intended as a credit towards the original purchase order with J & V.
At the conclusion of this hearing, the circuit judge found that there was a separate agreement between J.E. Dunn and Supreme Fixture whereby J.E. Dunn would pay an additional $28,000 expediting fee and that J & V owed Supreme Fixture $30,638. Following the court's ruling, J & V's attorney asked the circuit judge to take notice of a comment in the accounts receivable that made reference to "Less 28,000 Dunn." Counsel then argued that the comment amounted to an accord and satisfaction. The circuit judge disagreed, *886 finding that the annotation on the document did not amount to an accord and satisfaction of the debt. He entered a judgment finding J & V in default and granting judgment to Supreme Fixture in the amount of $30,638, plus interest at the rate of 9.5%, costs of $100, and an attorney's fee of $3,063.
J & V's Arguments on Appeal
J & V raises four points on appeal: (1) the constitutionally required minimum contacts did not exist between J & V and Arkansas; (2) J & V did not waive its objection to personal jurisdiction; (3) Supreme Fixture's acceptance of J & V's checks was an accord and satisfaction; and (4) the circuit judge abused his discretion in denying J & V's motion to enlarge the response time.
Waiver of the Personal Jurisdiction Defense
Citing Glenn v. Student Loan Guarantee Foundation of Arkansas, 53 Ark.App. 132, 920 S.W.2d 500 (1996), J & V argues that defects in personal jurisdiction are not waived when a party fails to appear or to respond and that the trial court erroneously held that J & V had waived its objection to personal jurisdiction. We agree. A default judgment is void if the trial court lacked jurisdiction over the person. Id. Therefore, the defendant is not required to defend the suit or show a meritorious defense in order to attack the default judgment. Crockett v. Johnson, 259 Ark. 6, 530 S.W.2d 671 (1975). See also Pounders v. Chicken Country, Inc., 3 Ark.App. 220, 624 S.W.2d 445 (1981). Because a judgment entered by default without personal jurisdiction over a defendant who has not appeared is void, it necessarily follows that a default judgment entered without personal jurisdiction cannot be deemed valid if the defendant filed an untimely responsive pleading asserting that defense. Our disagreement, however, does not require reversal, as we conclude that the trial court had personal jurisdiction over the parties.
Personal Jurisdiction
A trial court's determination that the court has personal jurisdiction over the parties is normally a question of fact. See Moran v. Bombardier Credit, Inc., 39 Ark. App. 122, 839 S.W.2d 538 (1992). Absent a ruling on an issue, this court is ordinarily precluded from reviewing that issue on appeal. See Ross Explorations, Inc. v. Freedom Energy, Inc., 340 Ark. 74, 8 S.W.3d 511 (2000). However, the facts necessary to determination in this case are essentially undisputed by the parties and therefore, in our view, present a question of law that we may address. See Evans v. White, 284 Ark. 376, 682 S.W.2d 733 (1985); South Miller County Highway Dist. v. Dorsey, 174 Ark. 553, 297 S.W. 833 (1927).
J & V argues that its contacts with Arkansas cannot sustain personal jurisdiction in this state and points out the following undisputed facts: (1) all communications between Supreme Fixture and J & V were by telephone, facsimile, and mail; (2) J & V's agents never traveled to Arkansas, although Supreme Fixture's agents did travel to Montana and perform some installation work there; (3) J & V signed the purchase order in Montana; (4) J & V is a Montana corporation and has never had an office in Arkansas; and (5) although Supreme Fixture contends that it had an ongoing business relationship with J & V, none of its previous bids had been accepted by J & V in the past.
In International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the United States Supreme Court stated that due process requires *887 only that certain minimum contacts exist between the nonresident and the forum state such that the maintenance of the suit will not offend traditional notions of fair play and substantial justice. It is essential for a finding of personal jurisdiction that there be some act by which the defendant purposefully avails himself of the privilege of conducting business in the forum state. Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Whether the "minimum contacts" requirement has been satisfied is a question of fact that is to be decided on a case-by-case basis. Chemical Methods Leasco, Inc. v. Ellison, 46 Ark.App. 288, 879 S.W.2d 467 (1994).
As appellant argues, it is true that the use of interstate mail and banking facilities, standing alone, is insufficient to satisfy due process in asserting long-arm jurisdiction over a nonresident. John Norrell Arms, Inc. v. Higgins, 332 Ark. 24, 962 S.W.2d 801 (1998); Glenn v. Student Loan Guar. Found., supra. However, it has been established that a single contract can provide the basis for the exercise of jurisdiction over a non-resident defendant if there is a substantial connection between the contract and the forum state. See McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Nelms v. Morgan Portable Bldg. Corp., 305 Ark. 284, 808 S.W.2d 314 (1991). A promise to pay for services to be performed within a state is a relevant factor to consider in determining whether that state may assert personal jurisdiction over the party making the promise. See Williams Mach. & Fabrication, Inc. v. McKnight Plywood, Inc., 64 Ark.App. 287, 983 S.W.2d 453 (1998).
The parties disagree as to whether the $4,000 purchase order for delivery of the equipment to Montana and field welding was a modification of the original contract or a separate contract. However one characterizes that transaction, the conclusion is inescapable that the parties engaged in a continuing course of conduct that was more than sufficient to justify personal jurisdiction in Arkansas. Their original agreement contemplated that appellee would prepare shop drawings and manufacture custom-built equipment that was specifically designed to meet J & V's requirements. This agreement also necessitated continuing communication between the parties for a substantial period of time from the first contact between the parties until delivery date of the equipment. As the United States Supreme Court stated in Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985): "[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." The following quotation from Burger King Corp. v. Rudzewicz, supra, applies with equal force to the case before us: "It is these factorsprior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealingthat must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." Id. at 479, 105 S.Ct. 2174.
The record clearly demonstrates that J & V purposefully availed itself of the privilege of conducting activities within this state, see Hanson v. Denckla, 357 U.S. at 253, 78 S.Ct. 1228 and has caused Supreme Fixture to perform extensive services here. See Williams Mach. & Fabrication, Inc. v. McKnight Plywood, Inc., 64 Ark. App. at 290, 983 S.W.2d at 455. In the fall of 1998, J & V requested its assistance in obtaining approval to bid on the prison *888 project in Montana, and Supreme Fixture did so. Supreme Fixture instructed the project's food-service consultant to send a set of the specifications for the project to J & V. J & V then supplied a set of the specifications to Supreme Fixture so that it could prepare a quote. After obtaining the bid, J & V accepted Supreme Fixture's quote and sent a purchase order to Supreme Fixture requesting that it manufacture custom-made kitchen equipment that was to be delivered at Little Rock. Between November 1998 and July 1999, Supreme Fixture and J & V frequently communicated by facsimile and telephone. As a result of those communications, several modifications and additions were made to the plans and original purchase order. These modifications necessitated a resubmittal and approval of the changes in prices and shop drawings. At J & V's request, Supreme Fixture delivered the material to Montana and performed field welding there. In our view, J & V's contract with the appellee exceeded the minimum required to enable Arkansas to exact jurisdiction over appellant.
Accord and Satisfaction
On the merits, J & V also argues that Supreme Fixture's acceptance of its checks constituted an accord and satisfaction of its claim against J & V. J & V, however, did not raise this issue until the damages hearing, after the trial judge had ruled on the amount it owed. Accord and satisfaction is an affirmative defense, which must be proved by the party asserting it. Fort Smith Serv. Fin. Corp. v. Parrish, 302 Ark. 299, 789 S.W.2d 723 (1990). Arkansas Rule of Civil Procedure 8(c) requires that all affirmative defenses must be contained in the response to a complaint. Additionally, J & V was not entitled to raise an affirmative defense after it had been found in default and its liability had been established. See B & F Eng'g, Inc. v. Cotroneo, 309 Ark. 175, 830 S.W.2d 835 (1992); Gardner v. Robinson, 42 Ark.App. 90, 854 S.W.2d 356 (1993). Because J & V failed to raise and develop this defense in a timely manner, we affirm on this point.
The Motion to Enlarge
J & V also argues that the trial judge abused his discretion in denying its motion to enlarge the time within which to file its motion to dismiss. Arkansas Rules of Civil Procedure 6(b) and 55 give trial courts discretion in deciding whether to enter a default judgment. See Moore v. Taylor Sales, Inc., 59 Ark.App. 30, 953 S.W.2d 889 (1997). Under these rules, J & V had the burden of proving that its failure to file the motion in a timely manner was the result of mistake, inadvertence, surprise, excusable neglect, or other just cause. Rule 6(b)(2) allows a trial court, in its discretion, to enlarge the time for answering, even after the initial period for answering has passed. Layman v. Bone, 333 Ark. 121, 967 S.W.2d 561 (1998). The rule, however, does not permit the filing of late answers in any circumstance; when a defendant's actions can be characterized as "neglect" that was not "excusable," rather than "mistake," the appellate court will not say that the trial judge abused his discretion in declining to enlarge the time for the defendant to file his answer. Id.; Tyrone v. Dennis, 73 Ark.App. 209, 39 S.W.3d 800 (2001). A trial judge does not abuse his discretion in granting a default judgment where the delay was due to carelessness or a failure to attend to business. Moore v. Taylor Sales, Inc., supra.
J & V's attorney stated that he was not contacted about preparing the response until early afternoon of the day that the answer was due; therefore, it appears that J & V was not attending to its business. Accordingly, we hold that the trial judge *889 did not abuse his discretion in denying the motion.
Affirmed.
JENNINGS and NEAL, JJ., agree.