David DAVIS and Marlo Davis *v.*
ST. JOHNS HEALTH SYSTEM, INC.

01-653                                        71 S.W.3d 55

Supreme Court of Arkansas
Opinion delivered March 21, 2002

*H. David Blair* and *Ray Baxter*, for appellants.

*Bassett Law Firm*, by: *Shannon L. Fant*, for appellee.

ROBERT L. BROWN, Justice. This is a medical malpractice case that presents the issue of whether Arkansas courts have personal jurisdiction over a Missouri corporation. Appellants David Craig Davis and Marlo Davis are a married couple living in the state of Missouri. The appellee is St. John's Health System, Inc. (St. John's), a Missouri corporation, which is qualified to do business in Arkansas. The Davises filed suit against St. John's in Carroll County Circuit Court, and the suit was dismissed for lack of personal jurisdiction over St. John's. The Davises appeal this dismissal.

On October 26, 1998, David Craig Davis experienced chest pains and sought medical treatment at St. John's in Shell Knob, Missouri. He was attended to by Dr. Randall K. Miller, a physician employed by St. John's. Dr. Miller concluded that Davis was suffering from costochondritis and administered a steroid injection to Davis. Dr. Miller did not order a chest x-ray or do a complete blood count on Davis. Davis was actually suffering from pneumonia, for which steroids are the wrong treatment.

Davis subsequently experienced a worsening of his symptoms and sought further medical treatment at another facility. The treating physicians at the new facility administered antibiotics to treat the pneumonia, but Davis's condition continued to worsen. On October 28, 1998, he was admitted to the intensive care unit

at the North Arkansas Medical Center in Harrison and placed on a ventilator. On October 30, 1998, he was transferred to Baptist Medical Center in Little Rock, where he remained until November 30, 1998.

On September 29, 2000, the Davises filed a complaint against St. John's in Carroll County Circuit Court. They alleged negligence against St. John's on the basis that Dr. Miller, its employee, erred in his diagnosis of costochondritis when Davis was actually suffering from pneumonia. The Davises specifically alleged that Davis's treatment for pneumonia was compromised by the steroids administered by Dr. Miller.

On December 29, 2000, the Davises amended their complaint to allege additional jurisdictional facts. In their amended complaint, they asserted that St. John's is a foreign corporation qualified to do business in Arkansas and subject to service of process in this state. The complaint further maintained that St. John's owns substantial property in Arkansas and operates medical facilities in this state. Through its operation of the medical facilities, St. John's has employees working in Arkansas. The complaint separately alleged that St. John's has wholly owned subsidiaries located in Arkansas that operate medical care facilities in the state. These subsidiaries also, according to the complaint, own substantial property in the state and have employees in the state.

St. John's filed a motion to dismiss for lack of personal jurisdiction of Arkansas courts pursuant to Ark. R. Civ. P. 12(b)(2). In its brief in support of that motion, St. John's noted that Ozark Regions Health System, Inc., d/b/a Carroll County Regional Medical Center, is a corporate member of St. John's and an Arkansas corporation. St. John's argued to the trial court that despite this ownership of an Arkansas corporation, it did not have sufficient contacts with Arkansas to support the personal jurisdiction of Arkansas courts. The Davises responded to this motion and brief and observed that St. John's had designated an agent in Arkansas for service of process. The Davises did, in fact, effect service of process on St. John's by serving this Arkansas agent with their complaint.

The trial court held a hearing on the motion to dismiss and subsequently dismissed the complaint for lack of personal jurisdiction over St. John's. The sole point before this court on appeal is whether the trial court erred in dismissing the Davises' complaint for lack of personal jurisdiction. The Davises make several alternative arguments in support of their position. First, they assert that by serving the agent for service of process for St. John's in Arkansas, they gained personal jurisdiction over the Missouri corporation. Secondly, they claim that St. John's consented to the jurisdiction of Arkansas courts by doing business in Arkansas. Thirdly, they urge that even if neither of these arguments is persuasive, St. John's has sufficient contacts with the State of Arkansas to sustain general jurisdiction by the Arkansas courts over it.

Rule 12(b)(2) of the Arkansas Rules of Civil Procedure provides that lack of jurisdiction over the person is a defense to a complaint that can be raised by motion. In considering the parties' arguments surrounding a Rule 12(b)(2) motion, this court looks to the complaint for the relevant facts alleging jurisdiction, which are taken as true. *Malone & Hyde v. Chisley*, 308 Ark. 308, 825 S.W.2d 558 (1992); *Howard v. County Court of Craighead County*, 278 Ark. 117, 644 S.W.2d 256 (1983). If the complaint does not allege sufficient facts on which personal jurisdiction can rest, then the complaint is factually deficient. *Howard v. County Court of Craighead County, supra*. Mere conclusory statements devoid of a factual foundation do not suffice in this inquiry. *See id*.

Prior to the 1995 legislative session, the long-arm statute allowed personal jurisdiction to be exercised over a non-resident defendant when there was a cause of action arising from the person's transacting any business in this state, contracting for services or things in this state, causing tortious injury in this state, owning real property in the state, as well as other grounds. Ark. Code Ann. § 16-4-101C. (effectively repealed by amendment 1995). In 1995, the Arkansas General Assembly amended the long-arm statute and limited it to the constraints imposed by the due process clause of the Fourteenth Amendment. *See* 1995 Ark. Acts 486. Arkansas' long-arm statute now reads:

B. PERSONAL JURISDICTION. The courts of this state shall have personal jurisdiction of all persons, and all causes of action or

claims for relief, to the maximum extent permitted by the due process of law clause of the Fourteenth Amendment of the United States Constitution.

Ark. Code Ann. § 16-4-101(b) (Repl. 1999). *See also John Norrell Arms, Inc. v. Higgins*, 332 Ark. 24, 962 S.W.2d 801 (1998). Thus, this court now looks only to Fourteenth Amendment due process jurisprudence when deciding an issue of personal jurisdiction.

■ The seminal case on personal jurisdiction and the due process clause is *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). In *International Shoe*, the United States Supreme Court expanded the limits of state jurisdiction over nonresident defendants, while leaving in place basic notions of due process limitations on that power. The Court in *International Shoe* looked not merely to the presence of the defendant in the state, as it had fifty years earlier in *Pennoyer v. Neff*, 95 U.S. 714 (1877), but rather looked to the nature of the contacts that the nonresident defendant had with the forum state. The Court said that attention must be paid to the "quality and nature" of those contacts, *see International Shoe* at 319, and also to whether or not that defendant through those contacts enjoyed the "benefits and protections" of the laws of the foreign state. *Id.* The Court further noted that there are situations in which a nonresident defendant's contacts with a forum state may be so substantial and continuous as to justify jurisdiction over that defendant, even though the cause of action is "entirely distinct from those activities." *Id.* at 318. The touchstone principle announced by the Court in *International Shoe* was whether assumption of personal jurisdiction over the nonresident defendant was based on "minimum contacts" by the nonresident defendant in the forum state which does not offend "traditional notions of fair play and substantial justice." *Id.* at 316.

■ Since *International Shoe*, the Court has had occasion to revisit the personal jurisdiction question. A few of those cases are relevant to our inquiry and have set out further principles governing state court jurisdiction. A nonresident defendant's contacts with a forum state, for example, must be sufficient to cause the defendant to "reasonably anticipate being haled into court there." *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The Court has also identified two types of personal jurisdiction:

general and specific. When a cause of action arises out of or is related to a defendant's contacts with the forum state, the exercise of personal jurisdiction is one of specific jurisdiction. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985). However, if the exercise of jurisdiction arises in a case not stemming from the defendant's contacts with the forum state, the exercise of personal jurisdiction is one of general jurisdiction. *Burger King Corp. v. Rudzewicz, supra; Perkins v. Benguet Mining Co.,* 342 U.S. 437 (1952); *International Shoe Co v. Washington, supra.* When general jurisdiction is in question, a defendant may be subject to the forum state's exercise of personal jurisdiction if contacts with the state are continuous, systematic, and substantial. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408 (1984).

■ This court has stated that it viewed the five-factor test for determining minimum contacts which was adopted by the Eighth Circuit Court of Appeals in *Burlington Industries, Inc. v. Maples Industries, Inc.,* 97 F.3d 1100 (8th Cir. 1996) as helpful. *See John Norrell Arms, Inc. v. Higgins, supra.* Those five factors are: (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties.

■ The Davises' first argument is that the Carroll County Circuit Court has jurisdiction over St. John's simply by virtue of its service of process on the registered agent for St. John's in this state. Two events in the past decade influence our decision on this point. The first is our case of *Malone & Hyde, Inc. v. Chisley, supra.* In *Malone,* we held that service of process on an Arkansas agent did *not* automatically give the Arkansas courts personal jurisdiction over a nonresident defendant. In that case, we granted a writ of prohibition, holding that there was no showing that the nonresident defendant's actions in this state gave rise to the cause of action, as was then required under our former long-arm statute. That statute contemplated causes of action arising out of the nonresident defendant's contacts with the state and essentially required specific jurisdiction. The second event that influences us was the 1995 amendment to the long-arm statute (Act 486), which eliminated the requirement that the cause of action arise out of the

nonresident defendant's specific contacts with the state. Act 486 allowed this state to exercise general jurisdiction up to the limits of the due process clause.

■ In our view, after the passage of Act 486 in 1995, the entire framework of personal-jurisdiction analysis changed. By Act 486, the General Assembly authorized Arkansas courts to exercise jurisdiction to the fullest extent due process will allow. The effect of this change was to convert Arkansas into a general-jurisdiction state for purposes of personal jurisdiction. Since the enactment of Act 486, this court has not had occasion to pass on the question of the limits of due process until this case. The United States Supreme Court, however, has provided precious little authority to govern us on the due process limits on general jurisdiction. One federal district court has summarized this marked lack of guidance:

> The U.S. Supreme Court has provided little specific guidance as to the precise limits on the exercise of general personal jurisdiction. In the more than 40 years since its decision in *International Shoe Co. v. Washington*, the Court has decided only two cases specifically addressing general personal jurisdiction.

> *Perkins v. Benguet Consolidated Mining Co., supra*, 342 U.S. at 437, 72 S. Ct. at 413 is the only case since *International Shoe* where the Supreme Court found that general personal jurisdiction was permissibly exercised by a state court. The defendant's mining operations in the Philippine Islands were completely stopped during the Japanese occupation. The president-general manager-principal stockholder of the defendant corporation returned to his home in Ohio. While in Ohio he carried on "continuous and systematic supervision of the necessarily limited war time activities of the company." *Perkins*, 342 U.S. at 446, 72 S. Ct. at 419. The corporation's records were kept in Ohio. The directors' meetings were held in Ohio. Corporate bank accounts were located in Ohio and all key business decisions were made there. In short, Ohio was the "principal, if temporary, place of business" for the corporation. (*quoting Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779, 104 S. Ct. 1473, 1481, 79 L. Ed. 2d 790 (1984)). Noting that the "essence of the issue" was of "general fairness to the corporation" the Court focused its inquiry on whether the nature and amount of the defendant's activities in Ohio made it "reasonable and just to subject the corporation to the jurisdiction" of the Ohio courts. *Perkins*, 342 U.S. at 444, 72

S. Ct. at 418. After defining the issue in these terms the Court simply concluded that, under these circumstances, an exercise of general personal jurisdiction was not prohibited by the due process clause.

*Follette v. Clairol, Inc.*, 829 F. Supp. 840, 844 (E.D. La. 1993).

Other jurisdictions are not of one mind over the question of whether an agent, standing alone, allows a forum state to assume general jurisdiction over a nonresident defendant. The Fifth Circuit Court of Appeals is the court that has most squarely addressed this question. *See Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179 (5th Cir. 1992). In *Wenche Seimer*, the Fifth Circuit concluded that an agent for service, by itself, was not enough:

> To assert, as plaintiffs do, that mere service on a corporate defendant automatically confers *general jurisdiction* displays a fundamental misconception of corporate jurisdictional principles. This concept is directly contrary to the historical rationale of *International Shoe v. State of Wash.*, 326 U.S. 310, 66 S. Ct. 154, 90 L. . Ed. 95 (1945)] and subsequent Supreme Court decisions. A registered agent, from any conceivable perspective, hardly amounts to "the general business presence" of a corporation so as to sustain an assertion of general jurisdiction.

*Wenche Siemer*, 966 F.2d at 183. *But see Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196 (8th Cir. 1990) (nonresident corporation's designation of agent for service of process in forum state amounted to consent to personal jurisdiction). The instant case differs from *Wenche Siemer* in that, here, the Davises assert contacts in addition to the presence of an agent for service of process in Arkansas. Thus, we need not decide this issue based solely on the presence of an agent for service in this state.

■ The Davises make the following allegation concerning the contacts that St. John's has with Arkansas:

> 3. At all times relevant herein Defendant has, in addition to qualifying to do business in Arkansas, systematically and continually done business within the State of Arkansas through the operation of medical care facilities within the State of Arkansas. At all times relevant herein Defendant has owned substantial property within the State of Arkansas and has employees both residing and working within the State of Arkansas on a daily basis. Furthermore Defendant, through wholly owned subsidiaries, who are in fact

> alter egos of Defendant, has, at all times relevant herein, continuously and systematically done business within the State of Arkansas, owns and has owned property within the State of Arkansas, and has employees both residing in and working on a regular and daily basis within the State of Arkansas. By reason of its continuous business done within the State of Arkansas, Defendant has a presence within the State of Arkansas and upon that basis alone is subject to the personal jurisdiction of this court.

Because the parties are only at the pleading stage of this litigation, we do not know the extent of St. John's contacts in Arkansas. What we do know at this point are the allegations made in the Davises' complaint, and we are required for purposes of a Rule 12(b)(2) motion to take these allegations as true. *Malone & Hyde v. Chisley, supra*. As a result, we accept the fact that St. John's is doing business in Arkansas, that it has substantial property in this state as well as employees, and that it is operating medical care facilities through wholly owned subsidiaries.

The question then becomes whether designating an agent for service of process *and* doing business in the state through a wholly owned subsidiary which entails ownership of substantial property and employment of employees in Arkansas subjects St. John's to the personal jurisdiction of our courts. St. John's argues vigorously that this is not enough to establish personal jurisdiction. We disagree. It is true that the parties reside in Missouri and the alleged negligence occurred there. It is also true that under our long-arm statute as it existed prior to Act 486 of 1995, personal jurisdiction would have been lacking. *See Malone & Hyde v. Chisley, supra*. Regardless of those facts, the General Assembly expanded the jurisdiction of Arkansas courts over nonresident defendants significantly by Act 486. That expansion, plus the fact that St. John's has designated an agent for service of process in this state and is doing substantial business in this state, through a wholly owned subsidiary, convinces this court that St. John's has sufficient contacts with this state to satisfy the constraints of the due process clause.

Accordingly, we reverse the order of dismissal and remand this case for further proceedings.

Reversed and remanded.

CORBIN, J., not participating.