

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-13-472

| | |
|---|---|
| JASON PRITCHETT, as President of COMMODITY RECOVERY SOLUTIONS, INC., and DON LONGLEY, as President of IRONWOOD SERVICES, INC. | **Opinion Delivered** November 13, 2013 |
| | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [CV-2012-2269] |
| APPELLANTS | |
| V. | HONORABLE DOUG SCHRANTZ, JUDGE |
| ANTHONY EVANS and US REFINERY, INC. | |
| APPELLEES | REVERSED AND REMANDED |

## RHONDA K. WOOD, Judge

Appellant, Commodity Recovery Solutions and Ironwood Services ("CRS"), argues that the circuit court wrongfully determined that Arkansas did not have personal jurisdiction over Texas resident Anthony Evans. We agree with CRS and reverse the order dismissing Anthony from the case because CRS alleged facts in its complaint that are sufficient to establish specific personal jurisdiction over Anthony.



I.  *Facts*

CRS sued Anthony Evans for breach of contract and other causes of action.[1] CRS is an Arkansas corporation, and Anthony is a Texas resident. The complaint asserted that someone by the name of Jason Evans contacted CRS about extracting the silver from CRS's leftover x-ray film. Anthony then called CRS and provided more specific price quotes for different types of x-rays. At the time, Anthony told CRS that his name was "Anthony Nichols" and that he was President of Petag, a Houston company that processes old x-ray film. Anthony called CRS a second time, gave another price quote, and said that he had arranged for Freightquote.com to pick up CRS's x-ray film at CRS's Arkansas location. A bill-of-lading attached to the complaint showed that Freightquote.com picked up the x-rays and listed "Anthony" as the contact for the consignee.[2]

After the pick-up, Anthony told CRS that he was sending it a check for twenty percent of the x-ray load. Later, CRS received a cashier's check for $24,000 that read "paid in full." CRS contacted Anthony and told him that it was uncomfortable cashing the check as written. Anthony told CRS to send the check back to him in Texas and that he would issue it another one.

CRS received a second check for the same amount, $24,000. This time, it read "paid." CRS called Anthony again and expressed its concern with cashing a check that read "paid" when it only amounted to twenty percent of the x-ray load. Anthony told

---

[1]CRS also sued Anthony Evans d/b/a US Refinery, but for clarity we refer to them collectively as Anthony throughout.

[2]The actual consignee was listed as "AMS," with an address of 6324 Alder Drive, Houston, TX 77081.

SLIP OPINION

CRS that the x-ray load was actually worth only $17,000 and that if CRS would cash the $24,000 check he would not sue for the $7,000 difference.

CRS then contacted Petag, the company Anthony said he owned. It turned out that Don Peterson, not Anthony, actually owned Petag. Don told CRS that Anthony's real name was Anthony Evans, that Anthony had delivered the x-ray shipment to Petag, and that Don had paid Anthony $99,812 for it. Further, Don alleged that Anthony had told him to lie to CRS by stating that a large amount of the x-rays could not be processed and were, therefore, worthless.

CRS alleged the above facts in its complaint. Anthony made a special appearance in Arkansas to challenge personal jurisdiction. The circuit court ruled that Arkansas lacked personal jurisdiction and dismissed Anthony from the case.[3]

## II. *Standard of Review*

Under Rule 12(b)(2) of the Arkansas Rules of Civil Procedure, a defendant may raise the defense of lack of personal jurisdiction by motion. In considering the parties' arguments surrounding a Rule 12(b)(2) motion, this court looks to the complaint for the relevant facts alleging jurisdiction, which are taken as true. *Malone & Hyde, Inc. v. Chisley*, 308 Ark. 308, 825 S.W.2d 558 (1992). If the complaint does not allege sufficient facts on which personal jurisdiction can rest, then the complaint is factually deficient. *Davis v. St. John's Health Sys., Inc.*, 348 Ark. 17, 71 S.W.3d 55 (2002).

---

[3]Other defendants included Jason Evans, Alex Evans, and two John Does. These defendants were never served and were dismissed. Ark. R. Civ. P. 54(b)(5) (2013) and *Global Econ. Res., Inc. v. Swaminathan*, 2011 Ark. App. 349, 389 S.W.3d 631.

SLIP OPINION

However, if the circuit court considers matters outside of the pleadings, a motion to dismiss is converted into one for summary judgment. *Ganey v. Kawasaki Motors Corp.*, 366 Ark. 238, 234 S.W.3d 838 (2006). Here, the circuit court considered the motion to dismiss and "other pleadings filed herein." Therefore, because the parties submitted matters outside of the pleadings and because the circuit court did not exclude them, we treat the motion to dismiss as a motion for summary judgment. *Clark v. Ridgeway*, 323 Ark. 378, 914 S.W.2d 745 (1996).

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Gentry v. Robinson*, 2009 Ark. 634, 361 S.W.3d 788. Once the moving party has established a prima facie case showing entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Mitchell v. Lincoln*, 366 Ark. 592, 237 S.W.3d 455 (2006). The evidence is reviewed in the light most favorable to the party against whom the motion was filed, with all doubts and inferences resolved against the moving party. *Hamilton v. Allen*, 100 Ark. App. 240, 267 S.W.3d 627 (2007).

There are no disputed facts as the parties agree on the essential facts surrounding Anthony's contact with Arkansas.[4] Thus, the question before this court is not whether there were material facts in dispute concerning Anthony's contact with Arkansas, but whether, taking those facts in the light most favorable to CRS, the facts asserted in the complaint form a sufficient basis to subject Anthony to the personal jurisdiction of

---

[4]Anthony never presented any affidavits contradicting CRS's allegations in its complaint, nor did he attach any exhibits to his motion to dismiss.



Arkansas as a matter of law. *See Purser v. Buchanan*, 2013 Ark. App. 449. Because this is an issue of law, our review is de novo. *Hobbs v. Jones*, 2012 Ark. 293, ___ S.W.3d ___.[5]

### III.   *Applicable Law*

Arkansas's long-arm statute permits our courts to exercise personal jurisdiction to the full extent of the Due Process Clause of the Fourteenth Amendment. Ark. Code Ann. § 16-4-101 (B) (Repl. 2010). To satisfy due process, the defendant must have "minimum contacts" with the state and the exercise of jurisdiction must not offend "traditional notions of fair play and substantial justice." *John Norrell Arms, Inc. v. Higgins*, 332 Ark. 24, 28, 962 S.W.2d 801, 803 (1998) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

CRS has not alleged that Anthony is subject to general personal jurisdiction in Arkansas. Instead, if Anthony is subject to Arkansas's jurisdiction, it must be through specific personal jurisdiction. If the cause of action arises from or is related to the defendant's contacts with the forum, the court is exercising "specific jurisdiction over the defendant." Newbern, Watkins, and Marshall, *Arkansas Civil Prac. & Proc.* § 10:2 (5th ed. 2010). A state can exercise specific personal jurisdiction even if the defendant's contacts with the forum are slight. *See John Norrell, supra.*

As part of our analysis, we take into account whether the nonresident's conduct and connection with Arkansas are such that he could "reasonably anticipate being haled into court" here, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980), and

---

[5]*See also* Newbern, Watkins, and Marshall, *Arkansas Civil Prac. & Proc.* § 26:6 (5th ed. 2010) ("When a motion for summary judgment is granted on the basis of a question of law, the appellate court reviews the matter de novo.").

SLIP OPINION

whether he has purposefully directed his activities toward Arkansas residents or availed himself of the privilege of conducting activities in Arkansas. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985).

These principles have been embodied in a five-factor test that this court adopted in *Moran v. Bombardier Credit, Inc.*, 39 Ark. App. 122, 839 S.W.2d 538 (1992). There, we said that the following factors are relevant in deciding whether a nonresident's contacts with the forum state were sufficient to impose jurisdiction: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Id.*

Personal jurisdiction can lie even if the nonresident has had only one contact with the forum state. *John Norrell, supra.* The fact that a nonresident initiated the relationship with an Arkansas company to ship products from Arkansas argues in favor of jurisdiction. *See Twin Springs Grp., Inc. v. Karibuni, Ltd.*, 2009 Ark. App. 649, 344 S.W.3d 100. But telephone and mail contacts do not, standing alone, amount to minimum contacts. *CDI Contractors, Inc. v Goff Steel Erectors, Inc.*, 301 Ark. 311, 783 S.W.2d 846 (1990). A recent case, though, has held that a "single bill-of-lading contract, for which [the nonresident defendant] is the consignee, raises a question of fact regarding specific personal jurisdiction over [the nonresident defendant]." *Hotfoot Logistics, LLC v. Shipping Point Mktg., Inc.*, 2013 Ark. 130, at 9, ___ S.W.3d ___, ___.



IV. *Discussion*

We hold that the facts alleged in CRS's complaint provide a sufficient basis, as a matter of law, to subject Anthony to specific personal jurisdiction in Arkansas. We reach this result, initially, by applying the *Moran* factors listed above.

Regarding the first factor, Anthony reached into Arkansas and initiated contact with CRS in order to conduct business with an Arkansas corporation. He called CRS on at least three occasions, emailed it another time with price quotes, and located and paid for the freight company to have the x-ray film shipped from Arkansas to Texas. Further, he mailed CRS two checks, had follow-up conversations with CRS, and attempted to negotiate a settlement of the dispute over payment. Unlike *CDI Contractors*, *supra*, these acts are more than simply mail and telephone contacts.

And while Anthony may not have an extremely large number of contacts with Arkansas, each of those contacts implicates the third *Moran* factor as they are directly related to this cause of action. On the fourth factor, Arkansas has a strong interest in providing its businesses with a forum to redress disputes, especially those premised on fraud and where the nonresident initiated the alleged misconduct.[6] Finally, it is naturally more convenient for the Arkansas corporation to have redress in Arkansas. And though Anthony is from Texas, it is a small inconvenience for him to appear here in a dispute involving his decision to solicit and buy Arkansas goods shipped from an Arkansas company.

---

[6]*Cf. Calder v. Jones*, 465 U.S. 783, 790 (1984) (holding that Florida defendants were the "primary participants in an alleged wrongdoing intentionally directed at a California resident, and jurisdiction over them is proper on that basis.").

Ultimately, the *Moran* factors weigh in favor of Arkansas exercising jurisdiction. The only factor that does not is the number of contacts; but with specific personal jurisdiction, the nonresident's contacts with the forum need only be slight. *See John Norrell, supra.* Moreover, two other Arkansas cases further support our holding that specific personal jurisdiction exists as a matter of law. *See Hotfoot Logistics, LLC v. Shipping Point Mktg., Inc.*, 2013 Ark. 130, __ S.W.3d __; *Twin Springs Grp., Inc. v. Karibuni, Ltd.*, 2009 Ark. App. 649, 344 S.W.3d 100.

In *Hotfoot*, an Arkansas trucking company responded to a third-party's solicitation to ship products for an Arizona shipping company. The Arkansas company hired a carrier to transport the Arizona company's goods from Arizona to Pennsylvania. The carrier returned a bill-of-lading to the Arkansas company. Yet the Arizona company never entered Arkansas and never directly contacted the Arkansas company, and the only connection the Arizona company had was as consignee on the bill-of-lading. Our supreme court ruled that this bill-of-lading, in itself, raised a fact question regarding Arkansas's specific jurisdiction over the Arizona company.

In *Twin Springs*, our court held that a fact question existed regarding personal jurisdiction over a nonresident defendant where the contract was initiated by the nonresident defendant, it was negotiated and executed by the defendant's agent while he was in Arkansas, and it provided for an Arkansas corporation to ship Arkansas poultry to the defendants in Bermuda.

This case is similar to both *Hotfoot* and *Twin Springs*. Here, like in *Twin Springs*, the nonresident defendant (Anthony) initiated contact with an Arkansas corporation (CRS) to

SLIP OPINION

ship goods from Arkansas to Texas. And here, like in *Hotfoot*, that defendant was listed on the bill-of-lading as contact for the consignee. The only difference is that Anthony never entered Arkansas like the corporate agent did in *Twin Springs*. But physical presence in the state isn't required: in *Hotfoot*, neither the Arizona company nor its agents entered Arkansas. And in this case, Anthony negotiated with Freightquote.com to enter the state on his behalf and paid it to do so. In other words, he never entered the state, but his agent did, just like in *Twin Springs*.

The distinction between those two cases and our current case is that in those, the circuit courts improvidently denied jurisdiction when there were disputed material facts surrounding the exercise of personal jurisdiction. Here, there are no material facts in dispute; therefore, we are left to decide whether, as a matter of law, CRS pleaded sufficient facts to establish specific personal jurisdiction. By applying the *Moran* factors, we hold that CRS did so plead and that Arkansas has specific personal jurisdiction over Anthony Evans. We therefore reverse the circuit court's order that dismissed him from the case and remand for further proceedings.

Reversed and remanded.

GLADWIN, C.J., and PITTMAN, J., agree.

*Mostyn Prettyman, PLLC*, by: *William M. Prettyman III* and *Joshua Q. Mostyn*, for appellants.

*Williams Law Firm of Arkansas*, by: *Jay B. Williams*, for appellees.