Larry D. Vaught, Judge, dissenting.
I respectfully disagree with the result reached by the majority in this case. I would affirm the circuit court's finding that it had personal jurisdiction over Goodwin and reach the merits of this appeal.
The majority correctly states that if Goodwin is subject to Arkansas's jurisdiction, it must be through specific personal jurisdiction. As part of our analysis, we must consider whether the nonresident's conduct and connection with Arkansas are such that he could "reasonably anticipate being haled into court" here, and whether he has purposely directed his activities toward Arkansas residents or availed himself of the privilege of conducting activities in Arkansas. Pritchett v. Evans , 2013 Ark. App. 679, at 5-6, 430 S.W.3d 223, 226 (citing World-Wide Volkswagen Corp. v. Woodson , 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) ; Burger King Corp. v. Rudzewicz , 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) ).
These principles have been embodied in a five-factor test set forth in Hotfoot Logistics, LLC v. Shipping Point Marketing, Inc. : (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. 2014 Ark. 460, at 7, 447 S.W.3d 592, 596.[1] After applying these factors, I *33 would hold that the facts alleged in Magness Oil's complaint provide a sufficient basis, as a matter of law, to subject Goodwin to specific personal jurisdiction in Arkansas.
Regarding the first factor, USAG and Goodwin initiated contact with the State of Arkansas by entering into and playing critical roles in contracts for the purported purpose of purchasing an Arkansas business-Magness Oil. USAG, Goodwin's client, was a party to the escrow-hypothecation agreement, the stated purpose of which was for the acquisition of Magness Oil and its multiple Arkansas properties. Magness Oil and its properties were expressly referenced and discussed in the escrow-hypothecation agreement, wherein Piedmont agreed to pay USAG $500,000. This agreement was a prerequisite for the purchase agreement between Magness Oil and Piedmont. Further, USAG, Goodwin's client, was specifically mentioned in the purchase agreement between Magness Oil and Piedmont as the escrow agent and was assigned the responsibility of holding the $500,000 "in accordance with the terms and provisions of this agreement." The purchase agreement contained a choice-of-forum clause wherein the parties agreed to be governed by the laws of the State of Arkansas. Moreover, Goodwin, in an April 23, 2009 letter to Piedmont, directed it to wire the $500,000 to his trust account. This letter specifically references the acquisition of the Arkansas business and properties and expressly states that the funds are being wired to him for that purpose.
Goodwin continued his contacts with Arkansas by emailing Magness Oil regarding the funds that he had allegedly converted. Specifically, Goodwin emailed Benny Magness, a Magness Oil principal, on eight occasions from April 22, 2011, to August 5, 2011, offering reasons for the delay in the funding for the purchase agreement and requesting more time for the funding to come through. Goodwin's August 5 email to Benny Magness advised that the $500,000 was gone.
As for the second factor, I concede that Goodwin did not have substantial contacts with the State of Arkansas. But under the law, his contacts do not have to be substantial. A state can exercise specific personal jurisdiction even if the nonresident defendant's contacts with the forum are slight. John Norrell Arms, Inc. v. Higgins , 332 Ark. 24, 31, 962 S.W.2d 801, 804 (1998). Specific personal jurisdiction can lie even if the nonresident has had only one contact with the forum state. Hotfoot Logistics , 2014 Ark. 460, at 7, 447 S.W.3d at 596.
Regarding the third factor, each of Goodwin's contacts is directly related to the controversy in this case-Goodwin's use of the escrow-hypothecation agreement and the purchase agreement executed between the parties to convert Magness Oil's $500,000. On the fourth factor, Arkansas has a strong interest in providing its businesses with a forum to redress disputes, especially those premised on fraud and those in which the nonresident initiated the alleged misconduct. Pritchett , 2013 Ark. App. 679, at 7 n.6, 430 S.W.3d at 227 n.6 (citing Calder v. Jones , 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (holding that Florida defendants were the "primary participants in an alleged wrongdoing intentionally directed at a California resident, and jurisdiction over them is proper on that basis") ). Finally, it is naturally more convenient for Magness Oil, an Arkansas business, to have redress in Arkansas. And though Goodwin is from Virginia, it is a small inconvenience for him to appear here in a dispute involving his decision to entangle himself in the legitimate sale of an Arkansas business in an *34 effort to convert the earnest money from that sale.
I liken this case to Hotfoot Logistics. There, our supreme court ruled that a bill of lading raised a factual question regarding Arkansas's personal jurisdiction over one defendant alleged to have breached a contract. Hotfoot Logistics , 2014 Ark. 460, at 8, 447 S.W.3d at 597. Our supreme court further held that the Arkansas circuit court had personal jurisdiction over two other defendants, who had never entered Arkansas and had never directly contacted the plaintiff, based on circumstantial evidence that they conspired to commit fraud against Hotfoot Logistics. Id. , 447 S.W.3d at 597.
Like the defendants in Hotfoot Logistics , Goodwin did not enter Arkansas and did not directly contract with Magness Oil. Also like the defendants in Hotfoot Logistics , the defendants in the instant case are from other states. Nevertheless, Goodwin did have contacts with the State of Arkansas. His client was expressly named as the escrow agent in Magness Oil's contract with Piedmont. Goodwin's client was a named party in the escrow-hypothecation agreement, wherein its stated purpose was the acquisition of Magness Oil. But Goodwin's role in the alleged conversion consisted of more than just his representation of USAG. He also acted as the escrow agent, who personally directed that the escrow funds be wired to his trust account. Furthermore, Goodwin himself contacted Magness, via email, multiple times to communicate information regarding the whereabouts of the funding for the purchase agreement and the earnest money. Finally, as in Hotfoot Logistics , there was circumstantial evidence that Goodwin and USAG conspired to convert Magness Oil's funds. This evidence demonstrates that Goodwin's contacts with the State of Arkansas were not limited to his relationship with his client, USAG; rather, the evidence establishes that he had direct contacts with Arkansas.
Based on the standards discussed above, I would hold that the facts presented demonstrate sufficient contacts to warrant personal jurisdiction over Goodwin. Goodwin should not have been surprised to be haled into court in Arkansas because he and his client, USAG, entered into one contract and were escrow agents for another contract-both for the stated purpose of the sale of an Arkansas business and multiple Arkansas real properties. When a defendant has deliberately engaged in significant activities within a state or has created continuing obligations between himself and residents of the forum, he has manifestly availed himself of the privilege of conducting business there. Hotfoot Logistics , 2014 Ark. 460, at 10, 447 S.W.3d at 598 (citing Burger King, supra ). Under these circumstances, I would hold that the assertion of personal jurisdiction is to be anticipated.
In sum, I would hold that the circuit court had personal jurisdiction over Goodwin and affirm the circuit court's denial of Goodwin's motion to dismiss. Therefore, I dissent.

The five-factor test has not only been applied by the Arkansas Supreme Court but also by the United States Court of Appeals for the Eighth Circuit. The first case to have used the five-factor test was Aftanase v. Economy Baler Co. , 343 F.2d 187, 195-96 (8th Cir. 1965), which derived the test from the principles in five United States Supreme Court cases: Int'l Shoe Co. v. Washington , 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ; Travelers Health Ass'n v. Virginia ex rel. State Corp. Comm'n , 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950) ; Perkins v. Benguet Consol. Mining Co. , 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952) ; McGee v. Int'l Life Ins. Co. , 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) ; and Hanson v. Denckla , 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).