John F. PAYNE *v.* Susan FRANCE

07-242                                                282 S.W.3d 760

Supreme Court of Arkansas
Opinion delivered April 10, 2008

*Tripcony Law Firm, P.A.*, by: *James L. Tripcony*, for appellant.

*Hope Fuqua & Campbell, P.A.*, by: *Ronald A. Hope, Kevin M. O'Dwyer*, and *Deidra Parish*, for appellee.

PAUL E. DANIELSON, Justice. Appellant John F. Payne appeals from the circuit court's order granting appellee Susan France's motion for summary judgment. In its order, the circuit court

found that Mr. Payne was the father of Ms. France's minor child, T.J.F., and ordered Mr. Payne to pay child support in the amount of $1500 per month. On appeal, Mr. Payne asserts that the circuit court erred in exercising personal jurisdiction over him. We hold that the circuit court's exercise of personal jurisdiction was proper, and we affirm.

The facts are these. On March 23, 2006, Ms. France filed a petition for paternity, alleging that on March 4, 1993, she gave birth to a child, T.J.F., while she was married to Ricky France. She asserted that she and Mr. France divorced on March 26, 1996, and that in the divorce decree, T.J.F. was found to be of the marriage, and Mr. France was ordered to pay child support. She contended that, since the entry of the decree, a paternity test had been administered showing that Mr. Payne was the biological father of T.J.F. Accordingly, she requested that a decree be entered declaring Mr. Payne the child's natural father, awarding her custody and child support, and awarding her attorney's fees and costs.

Mr. Payne moved to dismiss the petition, alleging that the circuit court lacked subject–matter jurisdiction and lacked personal jurisdiction over him. In his brief in support of his motion, Mr. Payne alleged that Arkansas Code Annotated § 9-17-201 (Repl. 2008) governed whether the circuit court had jurisdiction over him as a nonresident of the State of Arkansas to determine parentage. In an amended motion to dismiss and answer, Mr. Payne further asserted, in part, the following: (1) that he had not been served personally with summons in the State of Arkansas; (2) that he had not submitted to the jurisdiction of the state by consent, by entering a general appearance, or by filing a responsive document having the effect of waiving any contest to personal jurisdiction; (3) that he was not, nor had he ever been, a resident of the State of Arkansas; (4) that the child alleged to be his did not live in the State of Arkansas as a result of any of his acts or directives; (5) that he had not engaged in any sexual intercourse in the State of Arkansas by which the subject child of the action could have been conceived; and (6) that he had not asserted parentage in the putative father registry.

Ms. France responded, submitting that minimum contacts existed between Mr. Payne and the State of Arkansas, making the exercise of jurisdiction fair, based on the following:

> Defendant has voluntarily directed his activities toward Arkansas and has purposely availed himself of the benefits and protection of Arkansas and its laws by traveling and purposefully utilizing the state of Arkansas to conduct business for the betterment of his

company. Moreover, Defendant willfully presented himself to a paternity test in Pulaski County. . . .

On August 7, 2006, the circuit court entered an order directing Mr. Payne to provide certain information requested of him by Ms. France and noting that failure to abide by the order would cause Mr. Payne to be found in contempt. Ms. France subsequently filed a motion for contempt and continuance, in which she stated that she had not received the information from Mr. Payne that the circuit court had ordered him to produce. She stated that discovery was required to prove her contention that the circuit court had personal jurisdiction over Mr. Payne and requested that Mr. Payne be held in contempt.

Ms. France then filed a second amended and substituted petition for paternity, restating the assertions made in her prior petition and alleging that the circuit court had the authority to exercise personal jurisdiction over the parties, specifically stating:

> 7. That the Defendant and Plaintiff voluntarily entered into a written agreement in Arkansas for performance of genetic testing to determine paternity.
>
> 8. That genetic testing to determine paternity was administered in Arkansas.
>
> 9. That witnesses to the genetic testing to determine paternity reside in Arkansas.

Ms. France again requested that a decree be entered declaring Mr. Payne to be the natural father of T.J.F., maintained that she was the proper person to have custody of the child, subject to Mr. Payne's right to reasonable visitation, and requested child support.

The circuit court denied Mr. Payne's motion to dismiss and granted Ms. France's motion for contempt. In its order, the circuit court specifically found that it had personal jurisdiction over Mr. Payne:

> Here, the Defendant has availed himself of the benefits and protections of Arkansas law by submitting to a paternity test in Arkansas where the child and the Plaintiff reside; by doing business in Arkansas, and by conferring with an attorney in Arkansas, reasonably anticipating being haled into an Arkansas Court for the determination of paternity, so that the exercise of personal jurisdiction by an Arkansas Court does not offend traditional notions of fair play and substantial justice. See Concrete Wallsystems of Ark., Inc. v. Master Paint Ind. Coating Corp., ___ S.W.3d ___, 2006 WL 720049 (Mar. 22, 2006 Ark. Ct. App.)

Four days later, Mr. Payne moved to dismiss Ms. France's second amended and substituted petition for paternity. He claimed that Ms. France's petition failed to state facts upon which relief could be granted, in that it failed to state facts upon which the circuit court could make a finding that it had jurisdiction over Mr. Payne's person, and, therefore, the petition should be dismissed under Arkansas Rule of Civil Procedure 12(b)(6). He further asserted that the circuit court lacked jurisdiction over his person, and, therefore, the petition should be dismissed under Ark. R. Civ. P. 12(b)(2). Ms. France, in response, asserted that Mr. Payne's motion should be denied "pursuant to this Court's order filed September 18, 2006 that states this Court has jurisdiction as to the defendant."

Ms. France then moved for summary judgment to establish paternity and child support. She asserted that, despite Mr. Payne's lack of cooperation, she was able to determine his net income and that, during a deposition, Mr. Payne admitted that his take home pay was $120,000 per year. She averred that Mr. Payne had made no argument contesting the validity of the DNA testing for paternity and that the test results should be admitted into evidence as proof of paternity. Because, she urged, there were no issues of material fact, Ms. France requested the circuit court enter an order establishing paternity of T.J.F., naming Mr. Payne as the father of the child, awarding Ms. France custody of the minor child, and ordering Mr. Payne to pay child support based on his income of $120,000 per year. Mr. Payne responded, again asserting that the circuit court lacked jurisdiction over his person and that Ms. France had not established that she was entitled to judgment as a matter of law.

As already stated, the circuit court granted Ms. France summary judgment, finding that it had jurisdiction, that venue was proper, and that the paternity of T.J.F. had been established by paternity testing. Further finding that Mr. Payne's annual income was approximately $120,000, the circuit court ordered Mr. Payne to pay child support in the amount of $1500 monthly, retroactively to the date of the filing of Ms. France's initial petition on March 23, 2006. Mr. Payne now appeals.

In essence, Mr. Payne asserts that the circuit court erred in granting Ms. France summary judgment because her pleadings, along with the affidavits and deposition on file, showed that the circuit court lacked personal jurisdiction over him. Ms. France responds that there is ample evidence to support the circuit court's exercise of jurisdiction over Mr. Payne. The issue to be determined is whether the circuit court properly exercised personal jurisdiction over Mr. Payne.

The law is well settled that summary judgment is to be granted by a circuit court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *See Stromwall v. Van Hoose,* 371 Ark. 267, 265 S.W.3d 93 (2007). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *See id.*

On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *See id.* We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *See id.* Our review focuses not only on the pleadings, but also on the affidavits and documents filed by the parties. *See id.*

Here, it is clear that Mr. Payne is not a resident of Arkansas. Under the Uniform Interstate Family Support Act (UIFSA), an Arkansas court may exercise personal jurisdiction over a nonresident individual under the provisions of Arkansas Code Annotated § 9-17-201 (Repl. 2008), which provides:

> In a proceeding to establish, enforce, or modify a support order or to determine parentage, a tribunal of this state may exercise personal jurisdiction over a nonresident individual or the individual's guardian or conservator if:
>
> (1) the individual is personally served with summons within this state;
>
> (2) the individual submits to the jurisdiction of this state by consent, by entering a general appearance, or by filing a responsive document having the effect of waiving any contest to personal jurisdiction;
>
> (3) the individual resided with the child in this state;
>
> (4) the individual resided in this state and provided prenatal expenses or support for the child;
>
> (5) the child resides in this state as a result of the acts or directives of the individual;
>
> (6) the individual engaged in sexual intercourse in this state and the child may have been conceived by that act of intercourse;

(7) the individual asserted parentage in the Putative Father Registry maintained in this state by the Department of Health; or

(8) there is any other basis consistent with the constitutions of this state and the United States for the exercise of personal jurisdiction.

Ark. Code Ann. § 9-17-201. Our examination of the record reveals that none of the statute's first seven bases apply; thus, subsection (8) requires us to examine Arkansas's long-arm statute to determine whether the circuit court erred in exercising personal jurisdiction over Mr. Payne.

Arkansas's long-arm statute, which sets forth the personal jurisdiction of Arkansas courts, is codified at Ark. Code Ann. § 16-4-101 (Repl. 1999) and provides, in pertinent part:

B. *Personal Jurisdiction.* The courts of this state shall have personal jurisdiction of all persons, and all causes of action or claims for relief, to the maximum extent permitted by the due process of law clause of the Fourteenth Amendment of the United States Constitution.

Ark. Code Ann. § 16-4-101(B). In accordance with the statute, we look to Fourteenth Amendment due-process jurisprudence when deciding an issue of personal jurisdiction. *See Davis v. St. John's Health Sys., Inc.,* 348 Ark. 17, 71 S.W.3d 55 (2002).

As previously recognized by this court, the seminal case on personal jurisdiction and the Due Process Clause is *International Shoe Co. v. Washington,* 326 U.S. 310 (1945). *See, e.g., Ganey v. Kawasaki Motors Corp., U.S.A.,* 366 Ark. 238, 234 S.W.3d 838 (2006). In *International Shoe,* the United States Supreme Court expanded the limits of state jurisdiction over nonresident defendants, while leaving in place basic notions of due-process limitations on that power. The Court in *International Shoe* looked to the nature of the contacts that the nonresident defendant had with the forum state, explaining that attention must be paid to the "quality and nature" of those contacts and also to whether or not that defendant through those contacts enjoyed the "benefits and protections" of the laws of the foreign state. 326 U.S. at 319. The Court further noted that there are situations in which a nonresident-defendant's contacts with a forum state may be so substantial and continuous as to justify jurisdiction over that defendant, even though the cause of action is "entirely distinct

*from those activities." Id.* at 318. The touchstone principle announced by the Court in *International Shoe* was whether assumption of personal jurisdiction over the nonresident defendant was based on "minimum contacts" by the nonresident defendant in the forum state which does not offend "traditional notions of fair play and substantial justice." *Id.* at 316.

Since *International Shoe*, the Supreme Court has revisited the personal-jurisdiction question, setting out further principles governing state-court jurisdiction. We discussed the expanded doctrine of personal jurisdiction in *Davis v. St. John's Health System, Inc., supra,* and explained:

> A nonresident defendant's contacts with a forum state, for example, must be sufficient to cause the defendant to "reasonably anticipate being haled into court there." *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The Court has also identified two types of personal jurisdiction: general and specific. When a cause of action arises out of or is related to a defendant's contacts with the forum state, the exercise of personal jurisdiction is one of specific jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985). However, if the exercise of jurisdiction arises in a case not stemming from the defendant's contacts with the forum state, the exercise of personal jurisdiction is one of general jurisdiction. *Burger King Corp. v. Rudzewicz, supra; Perkins v. Benguet Mining Co.,* 342 U.S. 437 (1952); *International Shoe Co v. Washington, supra.* When general jurisdiction is in question, a defendant may be subject to the forum state's exercise of personal jurisdiction if contacts with the state are continuous, systematic, and substantial. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984).

348 Ark. at 23-24, 71 S.W.3d at 58-59. We have further held that the Eighth Circuit Court of Appeals' five-factor test for determining minimum contacts was helpful in making such a determination. *See id.* (citing *John Norell Arms, Inc. v Higgins*, 332 Ark. 24, 962 S.W.2d 801 (1998)). Those five factors are: (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties. *See id.*

In the instant case, Ms. France's complaints and the supporting affidavits and depositions alleged and demonstrated the following contacts between Mr. Payne and Arkansas: (1) that Mr. Payne agreed to voluntarily submit to a paternity test; and (2) that

the genetic testing was administered in Arkansas. Moreover, Mr. Payne's own deposition testimony revealed that he drove from Ennis, Texas, to Little Rock to submit to the paternity test.[1] While in Little Rock, he stopped, made a sales call to a Little Rock business, and went to the lab for the actual paternity test. He then went to lunch at a Little Rock restaurant with Ms. France, accompanied by his pastor who had come with him for the trip. We hold that these contacts were sufficient to satisfy the requirements of the Due Process Clause.

Mr. Payne agreed to a paternity test to be performed in Arkansas and voluntarily traveled to Arkansas to participate in the test. The paternity test resulted in a finding that Mr. Payne was T.J.F.'s father, and the instant paternity action resulted. Therefore, the instant paternity action arose out of or was related to Mr. Payne's contacts with Arkansas. In addition, it is quite clear that a person submitting to a paternity test should foresee the possibility that a paternity suit and support action might be brought, depending on the results of the test. For these reasons, we hold that Mr. Payne's travel to Arkansas and his participation in a paternity test within the state constituted sufficient minimum contacts with Arkansas, such that he could reasonably anticipate being haled into court here. We hold that the circuit court had specific personal jurisdiction over Mr. Payne.

We turn, then, to the second prong required for personal jurisdiction over Mr. Payne — that the Arkansas court's exercise of jurisdiction over him would not offend traditional notions of fair play and substantial justice. Here, Mr. Payne has been and remains a resident of Texas, a state just to the southwest of and bordering Arkansas. He has already demonstrated that he is able to travel to Arkansas and back in the same day, as evidenced by his travel to Arkansas for the paternity testing. Thus, the burden of litigating this paternity and child-support action in Arkansas is in no way unreasonable. Furthermore, the State of Arkansas certainly has an interest in protecting its minor children and in ensuring the payment of child support on their behalf. Accordingly, we hold that the Arkansas court's exercise of jurisdiction over Mr. Payne did not offend the traditional notions of fair play and substantial justice.

[1] Mr. Payne's deposition testimony was submitted by Ms. France in support of her response to Mr. Payne's motion to dismiss.

Because we hold that the circuit court's exercise of personal jurisdiction over Mr. Payne was based on minimum contacts by him in Arkansas, which do not offend traditional notions of fair play and substantial justice, we hold that the circuit court did not err in granting summary judgment. Accordingly, we affirm.

Affirmed.

IMBER, J., not participating.