SLIP OPINION

# SUPREME COURT OF ARKANSAS

No. CV–14–291

| | |
|---|---|
| HOTFOOT LOGISTICS, LLC, AND FREIGHT AMBULANCE, LLC<br><br>APPELLANTS<br><br>V.<br><br>SHIPPING POINT MARKETING, INC.; DAVID FISHGOLD; AND LOUIS N. FISHGOLD<br><br>APPELLEES | **Opinion Delivered** November 6, 2014<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CV–10–1466]<br><br>HONORABLE TIMOTHY DAVIS FOX, JUDGE<br><br>REVERSED AND REMANDED. |

**KAREN R. BAKER, Associate Justice**

This appeal returns to this court for the third time. The lawsuit stems from the contracts and payments for services in delivering produce. The relevant parties are as follows. Hotfoot Logistics, LLC ("Hotfoot") is a regulated freight property broker with its principal place of business in Little Rock, Arkansas. Freight Ambulance, LLC ("Freight") is a regulated carrier with its principal place of business in Cabot, Arkansas.[1] Western Brokerage, Inc., is a regulated property broker that arranges transportation of goods and is based in Phoenix, Arizona. Shipping Point Marketing, Inc. ("SPM") is a shipping company based in Phoenix, Arizona. David Fishgold is the president of SPM and Louis N. Fishgold is the president of Western Brokerage (collectively "the Fishgolds"). We recounted the facts underlying this appeal in our most recent opinion, *Hotfoot Logistics, LLC v. Shipping Point Marketing, Inc.*

---

[1]Hotfoot has paid Freight Ambulance for its services in this case and therefore assumes all rights of Freight Ambulance in this matter.

("*Hotfoot II*"), 2013 Ark. 130, at 1–4, 426 S.W.3d 448, 449–50:

This case originally involved four independent shippers: (1) SPM, located in Phoenix, Arizona; (2) BoniPak Produce, Inc., located in Santa Maria, California; (3) Salyer American Fresh Foods, Inc., located in Salinas, California; and (4) Taylor Farms California, Inc., also located in Salinas, California. On November 25, 2008, these shippers engaged Western Brokerage, a transportation broker in Phoenix, Arizona, to arrange for the transportation of produce from Yuma, Arizona, to Scranton, Pennsylvania, and Albany, New York. Subsequently, Western Brokerage requested carriers by posting a notice on Internet Truck Stock, an Internet load board used by the trucking industry to solicit trucking business. Responding to Western Brokerage's solicitation, Hotfoot, an Arkansas trucking company based in Little Rock, agreed to transport multiple loads for $5,700. According to Hotfoot, it obtains most of its freight contracts via the Internet load boards, and the majority of its freight contracts are one-time transactions. Hotfoot then engaged one of its dedicated carriers, Freight Ambulance, an Arkansas company based in Cabot, to deliver the produce to Pennsylvania and New York.

Freight Ambulance picked up the freight from four locations in Yuma, Arizona, for the shippers. Specifically, Freight Ambulance picked up a load from Dole/Skyview Cooker in Yuma on behalf of SPM for delivery to Eastern Produce in Scranton, Pennsylvania. Western Brokerage then faxed a six-page rate-confirmation contract to Hotfoot's home office in Little Rock. The rate-confirmation contract listed, among other things, the carrier rate for the cargo, as well as a description of the vegetable products to be picked up from each shipper. In this contract, Western Brokerage promised to pay Hotfoot $5,700 for transporting the loads. A Hotfoot representative signed the document and returned the rate confirmation to Western Brokerage by fax.

Freight Ambulance delivered a portion of the produce to Albany, New York, on November 29, 2008, and delivered the balance of the load to Scranton, Pennsylvania, on November 30, 2008. Freight Ambulance returned the bills of lading to Little Rock, where Hotfoot prepared the invoice for the freight charges. After these deliveries, Hotfoot made a demand on Western Brokerage for the payment of the unpaid balance but was unsuccessful in its collection efforts. Western Brokerage had closed its business, and Hotfoot shifted its efforts to collect the freight charges toward the shippers, who claimed they had already paid Western Brokerage. SPM claimed to have no knowledge of Western Brokerage's whereabouts, although the two companies allegedly shared facilities in Phoenix, Arizona, and the Fishgolds were the presidents of the respective companies.

[Hotfoot] originally filed suit in the Pulaski County District Court, but the case was later transferred to the Pulaski County Circuit Court. On April 14, 2010, Hotfoot

filed an amended complaint against SPM, the other independent shippers, and Western Brokerage for breach of contract. In its complaint, Hotfoot alleged one count of breach of contract against the shippers for payment of the freight charges in the amount of $5,700; one count of breach of contract against Western Brokerage in the amount of $5,700; and one count of fraud against the Fishgolds for conspiring to commit fraud against Hotfoot to arrange the load and then refuse payment. [SPM] filed motions to dismiss, and the circuit court granted them for lack of personal jurisdiction. Subsequently, appellees filed a motion for attorney's fees, which the circuit court granted. An appeal followed. In *Hotfoot Logistics, LLC v. Shipping Point Marketing, Inc.*, 2013 Ark. 72, ["*Hotfoot I*"], we dismissed the appeal without prejudice for lack of a final order.

After receiving a final order, the parties returned to this court in *Hotfoot II* where we reversed and remanded the matter for development of factual issues. After our remand in *Hotfoot II*, the parties returned to the circuit court. Through discovery, in August and September 2013, SPM requested that Hotfoot identify all evidence that Hotfoot may use to establish jurisdiction over SPM through (1) SPM's first set of interrogatories and requests for production of documents and (2) SPM's first requests for admission and second set of interrogatories and requests for production of documents. Hotfoot responded to both discovery requests and identified the documents that were attached to its amended complaint. On October 21, 2013, SPM filed its "motion for summary judgment on the issue of personal jurisdiction." On November 25, 2013, Hotfoot responded, and on December 10, 2013, the circuit court granted SPM's motion for summary judgment.

From that order, Hotfoot timely appealed and presents one issue on appeal: the circuit court erred in granting SPM's and the Fishgolds' motion for summary judgment based on



personal jurisdiction.[2]

The law is well settled regarding the standard of review used by this court in reviewing a grant of summary judgment. *See Repking v. Lokey*, 2010 Ark. 356, at 4–5, 377 S.W.3d 211, 216. A circuit court will grant summary judgment only when it is apparent that no genuine issues of material fact exist requiring litigation and that the moving party is entitled to judgment as a matter of law. *Id*. The burden of proof shifts to the opposing party once the moving party establishes a prima facie entitlement to summary judgment, and the opposing party must demonstrate the existence of a material issue of fact. *Id*. After reviewing the undisputed facts, the circuit court should deny summary judgment if, under the evidence, reasonable minds might reach different conclusions from the same undisputed facts. *Id*. On appeal, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party leave a material question of fact unanswered. *Id*. This court views the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id*. This review is not limited to the pleadings but also includes the affidavits and other documents filed by the parties. *Id*.

Here, Hotfoot contends that summary judgment is not appropriate. We begin our analysis with our long-arm statute, which provides in pertinent part:

> PERSONAL JURISDICTION. The courts of this state shall have personal jurisdiction of all persons, and all causes of action or claims for relief, to the maximum extent

---

[2]Although presented as two separate points on appeal, for purposes of our discussion we have combined the two issues – jurisdiction over SPM and the Fishgolds – into one issue.

permitted by the due process of law clause of the Fourteenth Amendment of the United States Constitution.

Ark. Code Ann. § 16-4-101(B) (Repl. 2010).

Accordingly, "the exercise of personal jurisdiction is limited only by federal constitutional law." *Yanmar Co., Ltd. v. Slater*, 2012 Ark. 36, at 5, 386 S.W.3d 439, 443. In accordance with the statute, we look to Fourteenth Amendment due-process jurisprudence when deciding an issue of personal jurisdiction. *See Davis v. St. John's Health System, Inc.*, 348 Ark. 17, 71 S.W.3d 55 (2002). As previously recognized by this court in *Payne v. France*, 373 Ark. 175, 181, 282 S.W.3d 760, 765 (2008), the seminal case on personal jurisdiction and the Due Process Clause is *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). In *International Shoe*, the United States Supreme Court expanded the limits of state jurisdiction over nonresident defendants, while leaving in place basic notions of due-process limitations on that power. *Payne*, 373 Ark. at 182–83, 282 S.W.3d at 765–66. The Court in *International Shoe* looked to the nature of the contacts that the nonresident defendant had with the forum state, explaining that attention must be paid to the "quality and nature" of those contacts and also to whether or not that defendant through those contacts enjoyed the "benefits and protections" of the laws of the foreign state. *Id*. The Court further noted that there are situations in which a nonresident-defendant's contacts with a forum state may be so substantial and continuous as to justify jurisdiction over that defendant, even though the cause of action is "entirely distinct from those activities." *Id*. at 181–82, 282 S.W.3d at 765. The touchstone principle announced by the Court in *International Shoe* was whether assumption of personal jurisdiction over the nonresident defendant was based on "minimum contacts" by the

5

nonresident defendant in the forum state which does not offend "traditional notions of fair play and substantial justice." *Id.*

Additionally, in *Payne*, we explained that, since *International Shoe*, the Supreme Court has revisited the personal-jurisdiction question, setting out further principles governing state-court jurisdiction. We discussed the expanded doctrine of personal jurisdiction in *Payne* and explained, a nonresident defendant's contacts with a forum state, for example, must be sufficient to cause the defendant to "reasonably anticipate being haled into court there." *Id.* at 182, 282 S.W.3d at 766 (citing *Worldwide [World-Wide] Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). The Supreme Court has also identified two types of personal jurisdiction: general and specific. *Id.*, 282 S.W. 3d at 766. When a cause of action arises out of or is related to a defendant's contacts with the forum state, the exercise of personal jurisdiction is one of specific jurisdiction. *Id.*, 282 S.W. 3d at 766; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985). However, if the exercise of jurisdiction arises in a case not stemming from the defendant's contacts with the forum state, the exercise of personal jurisdiction is one of general jurisdiction. *Id.*, 282 S.W. 3d at 766; *Burger King Corp.*, *supra*; *Perkins v. Benguet Mining Co.*, 342 U.S. 437 (1952); *International Shoe Co. v. Washington*, *supra*. When general jurisdiction is in question, a defendant may be subject to the forum state's exercise of personal jurisdiction if contacts with the state are continuous, systematic, and substantial. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984); *see Payne*, *supra*.

We have further held that the Eighth Circuit Court of Appeals' five-factor test for

determining minimum contacts is helpful in making such a determination. *John Norrell Arms, Inc. v. Higgins*, 332 Ark. 24, 29, 962 S.W.2d 801, 803 (1998)(quoting *Burlington Indus. Maples Indus.*, 97 F.3d 1100 (8th Cir. 1996)). Those five factors are: (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties. Additionally, a state can exercise specific personal jurisdiction even if the defendant's contacts with the forum are slight. *Id.* Personal jurisdiction can lie even if the nonresident has had only one contact with the forum state. *Id.*

With regard to the specific facts in this case, we have held that a bill of lading operates as both a receipt and a contract. *Ark. W. Ry. Co. v. Robson*, 171 Ark. 698, 285 S.W. 372 (1926); *St. Louis, Iron Mountain & S. Ry. Co. v. Citizens' Bank of Little Rock*, 87 Ark. 26, 112 S.W. 154 (1908). "The bill of lading is the basic transportation contract between the shipper–consignor and the carrier; its terms and conditions bind the shipper and all connecting carriers. *Texas & Pacific R. Co. v. Leatherwood*, 250 U.S. 478, 481 (1919)." *Southern Pac. Transp. Co. v. Commercial Metals Co.*, 456 U.S. 336, 342, 102 S. Ct. 1815, 1820 (1982).

Here, the question for this court is whether the circuit court correctly granted SPM's motion for summary judgment on personal jurisdiction. In granting summary judgment, on December 10, 2013, the circuit court entered a general denial:

> Defendants' Motion for Summary Judgment on the Issue of Personal Jurisdiction came on for consideration. Based on the pleadings and all other matters properly before the Court, the Court finds that it lacks personal jurisdiction over Defendants Shipping Point Marketing, Inc., David Fishgold, and Louis N. Fishgold, because Defendants lack sufficient minimum contacts with the State of Arkansas. Defendants' Motion for Summary Judgment on the Issue of Personal Jurisdiction, therefore, should be and is

SLIP OPINION

hereby granted. This case is dismissed with prejudice, and the Circuit Clerk is hereby directed to close this matter.

In Hotfoot's case, the facts demonstrating contacts between the parties are as follows: (1) the bill of lading between Hotfoot, an Arkansas corporation, and SPM to provide services outside the state was a contract and the basis for this action; (2) Hotfoot's truck and the truck's driver, Justin Pierce, originated in Arkansas and drove to Arizona to pick up the goods for SPM and deliver them to New York and Pennsylvania, and he returned the bill of lading to Arkansas; (3) the six-page rate confirmation for the loads of produce faxed from Western Brokerage, SPM's agent, to Hotfoot in Arkansas; and (4) Hotfoot's circumstantial evidence that the Fishgolds have conspired to commit fraud against Hotfoot and conspired to construct the load and refuse payment by SPM. SPM refused payment to Hotfoot on the grounds that it had already paid Western Brokerage, and it denied knowledge of Western Brokerage's whereabouts or of its principals when Hotfoot sought payment from Western Brokerage. Hotfoot contends that David Fishgold is president of SPM and Louis N. Fishgold is president of Western Brokerage; the two men are related and the two companies share the same physical address.

The record demonstrates that SPM entered into a contract with an Arkansas corporation, Hotfoot, with Arkansas employees and equipment. Applying the factors discussed above, first, the nature and quality of the contact is strong and favors jurisdiction, as the parties entered into a legally binding contract through the bill of lading. Second, however, the parties' contacts have been minimal. Third, the cause of action arises directly from the contacts between SPM and Hotfoot, the bill of lading, which favors jurisdiction.

Fourth, Arkansas has a strong interest in providing a forum for its residents and thus this factor favors jurisdiction. Fifth, the convenience of the parties favors jurisdiction in Arkansas because Hotfoot is an Arkansas business.

Moreover, we note that in *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223–24 (1957), a case similar to the one before us, the United States Supreme Court held that California could exercise personal jurisdiction over a Texas life insurance company where the insured was a California resident. In *McGee*, the life insurance contract was the basis for the jurisdiction and the insurance company had not traveled to, or maintained a business in, California. The Supreme Court explained:

> Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.
>
> Turning to this case we think it apparent that the Due Process Clause did not preclude the California court from entering a judgment binding on respondent. It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State. The contract was delivered in California, the premiums were mailed from there and the insured was a resident of that State when he died. It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims. These residents would be at a severe disadvantage if they were forced to follow the insurance company to a distant State in order to hold it legally accountable. When claims were small or moderate individual claimants frequently could not afford the cost of bringing an action in a foreign forum—thus in effect making the company judgment proof. Often the crucial witnesses—as here on the company's defense of suicide—will be found in the insured's locality. Of course there may be inconvenience to the insurer if it is held amenable to suit in California where it had this contract but

certainly nothing which amounts to a denial of due process.

*Id.* at 223–24 (citations omitted).

Based on the record before us, and the standards and factors discussed above, we hold that the contacts between Hotfoot and SPM are sufficient to warrant personal jurisdiction over SPM. Further, we hold that the record demonstrates that the contacts are sufficient to warrant personal jurisdiction over the Fishgolds as well. Finally, SPM and the Fishgolds should not have been surprised to be haled into court in Arkansas because SPM and the Fishgolds entered into a contract and conducted business with residents of Arkansas. Where a defendant has deliberately engaged in significant activities within a state or has created continuing obligations between himself and residents of the forum, he has manifestly availed himself of the privilege of conducting business there. *See Burger King, supra.* Under such circumstances, the assertion of personal jurisdiction is to be anticipated. Therefore, we reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

*Ronald G. Gillert*, for appellants.

*Cross, Gunter, Witherspoon & Galchus, P.C.*, by: *J.E. Jess Sweere*, for appellees.