

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV–16–83

|  |  |  |
|---|---|---|
| CAROLYN LAWSON | | **Opinion Delivered:** January 25, 2017 |
| | APPELLANT | APPEAL FROM THE ASHLEY COUNTY CIRCUIT COURT [NO. 02CV–15–51] |
| V. | | |
| SIMMONS SPORTING GOODS, INC. | | HONORABLE DON GLOVER, JUDGE |
| | APPELLEE | |
| | | REVERSED AND REMANDED |

## MIKE MURPHY, Judge

Appellant Carolyn Lawson ("Lawson") appeals from the Ashley County Circuit Court's order granting appellee Simmons Sporting Goods, Inc.'s ("Simmons") motion to dismiss for lack of personal jurisdiction. On appeal, Lawson contends that Simmons's contacts with Arkansas are sufficient to subject it to personal jurisdiction in Arkansas. We agree and therefore reverse and remand.

This lawsuit stems from a premises-liability suit. The relevant parties are Lawson and Simmons. Lawson is a resident of Ashley County, Arkansas. Simmons operates a retail sporting-goods store located in Bastrop, Louisiana. This is the corporation's only store, and it has never operated a store in Arkansas. It is a Louisiana corporation with its principal place of business, registered office, and registered agent in Bastrop, Louisiana. The corporation has only two shareholders, both of whom are Louisiana residents.

Notably, however, Simmons advertises in Arkansas to draw Arkansas residents to its store. Its advertising efforts include inserting promotional catalogs and display ads into various Arkansas newspapers, running promotional ads on television, and running ads online with the *Arkansas Democrat-Gazette*. The advertisements state that customers can get the same deals by "shopping from home" on its website. Of particular interest, Simmons hosts a "Big Buck Contest" in which the store awards a prize for the largest deer harvested in Arkansas. To qualify, one must bring the deer to the store in Louisiana and must live within 200 miles of Bastrop, Louisiana.

On August 3, 2013, Lawson traveled from her home in Arkansas to the Simmons store in Louisiana to shop at the "Annual Tent Sale" event. Upon entering the store, she fell on a rug located in the foyer and broke her arm. Lawson filed suit against Simmons in the Ashley County Circuit Court seeking damages for her pain and suffering, past and future medical expenses associated with care and treatment of the injuries sustained, and current and future restrictions upon her activities imposed by her injuries. In response, Simmons filed its motion to dismiss for lack of personal jurisdiction. A hearing was held on the matter, and the court issued an order granting the motion to dismiss. From that order, Lawson has timely appealed and presents one issue: the circuit court erred in granting Simmons's motion to dismiss based on personal jurisdiction.

When matters outside the pleadings are presented and not excluded by the circuit court in connection with a Rule 12(b) motion, we treat the motion as one for summary judgment. Ark. R. Civ. P. 12(b); *Hotfoot Logistics, LLC v. Shipping Point Mktg., Inc.*, 2013 Ark. 130, at 4, 426 S.W.3d 448, 451. The circuit court's order of dismissal states that the

court's findings were based on "the facts, law, record, briefs, and arguments of counsel." Because it is clear to this court that the circuit court considered exhibits outside the pleadings in making its ruling, the court's dismissal is converted to one for summary judgment.

The law is well settled regarding the standard of review used by this court in reviewing a grant of summary judgment. *Hotfoot Logistics, LLC v. Shipping Point Mktg., Inc.*, 2014 Ark. 460, at 4, 447 S.W.3d 592, 595. A circuit court will grant summary judgment only when it is apparent that no genuine issues of material fact exist requiring litigation and that the moving party is entitled to judgment as a matter of law. *Id.* The burden of proof shifts to the opposing party once the moving party establishes a prima facie entitlement to summary judgment, and the opposing party must demonstrate the existence of a material issue of fact. *Id.* This court views the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* After reviewing the undisputed facts, the circuit court should deny summary judgment if, under the evidence, reasonable minds might reach different conclusions from the same undisputed facts. *Id.* This review is not limited to the pleadings but also includes the affidavits and other documents filed by the parties. *Id.*

Here, there are no disputed facts as the parties agree on the essential facts surrounding Simmons's contacts with Arkansas. Thus, the question before this court is not whether there were material facts in dispute concerning Simmons's contacts with Arkansas, but whether the facts asserted form a sufficient basis to subject Simmons to the personal jurisdiction of Arkansas courts as a matter of law. Because this is an issue of law, our review is de novo. *Pritchett v. Evans*, 2013 Ark. App. 679, at 4, 430 S.W.3d 223, 226.

Lawson contends that personal jurisdiction over Simmons exists. We begin our analysis with our long-arm statute, which provides in pertinent part, "The courts of this state shall have personal jurisdiction of all persons, and all causes of action or claims for relief, to the maximum extent permitted by the due process of law clause of the Fourteenth Amendment of the United States Constitution." Ark. Code Ann. § 16-4-101(b) (Repl. 2010).

Accordingly, "the exercise of personal jurisdiction is limited only by federal constitutional law." *Hotfoot*, 2014 Ark. 460, at 5, 447 S.W.3d at 595. In accordance with the statute, we look to the Fourteenth Amendment due-process jurisprudence when deciding an issue of personal jurisdiction. *Id.* The seminal case on personal jurisdiction and the Due Process Clause is *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). *International Shoe* provides that state courts may exercise personal jurisdiction over an out-of-state defendant who has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (quoting *Int'l Shoe Co.*, 326 U.S. at 316). The Supreme Court identified two types of personal jurisdiction: general and specific. *Hotfoot*, 2014 Ark. 460, at 6, 447 S.W.3d at 596.

This case requires us to determine whether Simmons had the minimum contacts necessary to create specific jurisdiction. A forum may assert specific jurisdiction over a nonresident defendant where an alleged injury arises out of or relates to actions by the defendant himself that are purposefully directed toward forum residents, and where jurisdiction would not otherwise offend "fair play and substantial justice." *Burger King Corp.*

*v. Rudzewicz*, 471 U.S. 462, 4676 (1985) (quoting *Int'l Shoe Co.*, 326 U.S. at 320). The defendant must have "purposefully directed" his activities at residents of the forum, and the litigation must result from alleged injuries that "arise out of or relate to" those activities. *Id.* at 472.

The proper focus of the "minimum contacts" inquiry is "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). First, the relationship must arise out of contacts that the "defendant *himself*" creates with the forum State. *Id.* at 1122 (quoting *Burger King Corp.*, 471 U.S. at 475). Second, our "minimum contacts" analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there. *Id.* Notably, the proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way. *Id.* at 1125. Furthermore, "[a] nonresident defendant's contacts with a forum state must be sufficient to cause the defendant to 'reasonably anticipate being haled into court there.' This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random', 'fortuitous', or 'attenuated contacts'." *Yanmar Co., Ltd. v. Slater*, 2012 Ark. 36, at 6, 386 S.W.3d 439, 444 (quoting *Burger King Corp.*, 471 U.S. at 475).

In a recent case, the Supreme Court of Arkansas reiterated its adoption of the Eighth Circuit's five-factor test for determining minimum contacts over nonresident corporations. *Hotfoot*, 2014 Ark. 460, 447 S.W.3d 592. Those five factors are (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for

its residents; and (5) convenience of the parties. *Id.* at 7, 447 S.W.3d at 596. Additionally, a state can exercise specific personal jurisdiction even if the defendant's contacts with the forum are slight. *Id.*

In Lawson's case, the facts demonstrating contacts between the parties are explained as follows. From 2012 to 2015, Simmons printed and distributed catalogs in the State of Arkansas, and purchased newspaper advertising in Arkansas newspapers, as well as television advertisements. Importantly, Simmons hosted a contest that targeted Arkansas residents for the largest deer harvested in Arkansas. Simmons circulated a total of 483,700 print advertisements and a total of 1,696,704 copies of the catalog.[1] However, the relation of the cause of action to the contacts is weak. This cause of action arises out of a premises–liability suit that occurred in Louisiana; it is not directly connected to Simmons's advertisements. As discussed above, however, the proper question is not where the plaintiff experienced a particular injury or effect, but whether the defendant's conduct connects him to the forum in a meaningful way. *Walden*, *supra*. Moreover, Arkansas does have a strong interest in providing a forum for its residents, particularly for those residents who act in response to solicitation from outside states. Lastly, Simmons is located roughly thirty miles away from the forum, so the argument regarding an inconvenient forum is weak.

Applying that same five-factor test, *Myers v. Casino Queen, Inc.*, has similar facts to the case at hand. 689 F.3d 904, 911 (8th Cir. 2012). There, Myers filed suit in Missouri against Casino Queen, which is located in Illinois, for tortious conduct. The court noted

---

[1]The total circulation does not include *Arkansas Democrat-Gazette* display advertisements and does not include Internet advertising.

that although his injuries did not arise out of Casino Queen's advertising activities in a strict proximate-cause sense, his injuries were nonetheless related to Casino Queen's advertising activities because he was injured after responding to the solicitation. *Id.* The court reasoned that Casino Queen knew that customers from Missouri patronized its casino, and it could have foreseen that those customers would return to Missouri. *Id.* Because it was foreseeable that Casino Queen's actions could have consequences felt in Missouri, the Eighth Circuit held that jurisdiction was authorized under Missouri's long-arm statute.[2] *Id.* Furthermore, the Eighth Circuit Court of Appeals wrote the following:

> When a foreign corporation directly targets residents in an ongoing effort to further a business relationship, and achieves its purpose, it may not necessarily be unreasonable to subject that corporation to forum jurisdiction when the efforts lead to a tortious result. The corporation's own conduct increases the likelihood that a specific resident will respond favorably. If the resident is harmed while engaged in activities integral to the relationship the corporation sought to establish, we think the nexus between the contacts and the cause of action is sufficiently strong to survive the due process inquiry at least at the relatedness stage.

*Id.* at 913.

One point Simmons relies on is the fact that Lawson went to Simmons on her own the day of the incident without relying on a specific advertisement. She had, however, been aware of Simmons's advertisements in Arkansas, citing that she had seen one of their shoppers-guide inserts before. As in *Myers*, Simmons actively pursues marketing campaigns directed at Arkansas residents for the purpose of attracting customers to patronize the store. Similarly, Myers did not go to Casino Queen the day he was injured because he had relied

---

[2] While Missouri's and Arkansas's long-arm statutes differ in wording, there is no substantive difference.

on a particular ad, but the court held that his injuries were nonetheless related to Casino Queen's advertising activities because he was injured after responding to the solicitation in general. *Id.* at 913. The fact that Lawson did not respond directly to the solicitation—the record explains that she went to the store that day because her daughter had wanted to attend the tent sale that she had learned about by "word of mouth"—Simmons ultimately reached its goal of having Arkansas shoppers patronize the store.

Based on the record before us, and the standards and factors discussed above, we hold that the contacts between Lawson and Simmons are sufficient to warrant personal jurisdiction over Simmons. Simmons should not have been surprised to be haled into court in Arkansas because it anticipated and, in fact, wanted Arkansas residents to patronize its store, and obviously the residents would return home to Arkansas afterward. Under such circumstances, the assertion of personal jurisdiction is to be anticipated.[3] Accordingly, we reverse the circuit court's order dismissing the case for lack of personal jurisdiction and remand to the circuit court for further proceedings.

Reversed and remanded.

ABRAMSON and GLOVER, JJ., agree.

*Gibson & Keith, PLLC*, by: *Paul W. Keith*, for appellant.

*Hudson, Potts & Bernstein, LLP*, by: *G. Adam Cossey, for appellee.*

---

[3]Moreover, this court notes that Simmons wholly ignored the five-factor test discussed in *Hotfoot* and *Myers* as the most recent examples of personal-jurisdiction cases.