RAYMOND R. ABRAMSON, Judge
This is the second time this case has been before us. We initially reversed the Ashley County Circuit Court's dismissal of Carolyn Lawson's suit against Simmons Sporting Goods, Inc. (Simmons), for lack of personal jurisdiction. See Lawson v. Simmons Sporting Goods, Inc. , 2017 Ark. App. 44, 511 S.W.3d 883, reh'g denied (Mar. 1, 2017) ( Lawson I ). Following our reversal, Simmons filed a petition for a writ of certiorari with the United States Supreme Court, and the Supreme Court vacated our opinion and remanded the case in light of its decision in Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty. , --- U.S. ----, 137 S.Ct. 1773, 198 L.Ed.2d 395 (2017). See Simmons Sporting Goods, Inc. v. Lawson , --- U.S. ----, 138 S.Ct. 237, 199 L.Ed.2d 2 (Mem.) (2017). Having considered Bristol-Myers , we now affirm the circuit court's dismissal of the case for lack of personal jurisdiction.
We first briefly reiterate the facts of this case as discussed in Lawson I . This lawsuit stems from a premises-liability suit. Lawson is a resident of Ashley County, Arkansas. Simmons operates a retail sporting-goods store located in Bastrop, Louisiana. This is the corporation's only store, and it has never operated a store in Arkansas. It is a Louisiana corporation with its principal place of business, registered office, and registered agent in Bastrop, Louisiana. The corporation has only two shareholders, both of whom are Louisiana residents.
*192 Simmons advertises in Arkansas. Its advertising efforts include inserting promotional catalogs and display advertisements into various Arkansas newspapers, running promotional advertisements on television, and running advertisements online with the Arkansas Democrat-Gazette. The advertisements state that customers can get the same deals by "shopping from home" on its website. Simmons also hosts a "Big Buck Contest" in which the store awards a prize for the largest deer harvested in Arkansas. To qualify, one must bring the deer to the store in Louisiana and must live within 200 miles of Bastrop, Louisiana.
On August 3, 2013, Lawson traveled from her home in Arkansas to the Simmons store in Louisiana to shop at the "Annual Tent Sale" event. Lawson stated that she did not visit Simmons based on its advertisements but went because her daughter wanted to attend the tent sale that she had learned about by "word of mouth." Upon entering the store, she fell on a rug located in the foyer and broke her arm.
Lawson then filed suit against Simmons in the Ashley County Circuit Court seeking damages for her pain and suffering, past and future medical expenses associated with care and treatment of the injuries sustained, and current and future restrictions upon her activities imposed by her injuries. In response, Simmons filed its motion to dismiss for lack of personal jurisdiction. A hearing was held on the matter, and the circuit court issued an order granting the motion to dismiss. Lawson appealed the order to this court.
On appeal, we reversed the circuit court and held that Simmons's contacts with Arkansas created specific jurisdiction. Lawson I , 2017 Ark. App. 44, 511 S.W.3d 883. We noted that the Arkansas Supreme Court had recently reiterated its adoption of the Eighth Circuit five-factor test for determining minimum contacts over nonresident corporations in Hotfoot Logistics, LLC v. Shipping Point Marketing, Inc. , 2014 Ark. 460, 447 S.W.3d 592, and we applied that test. Id. Those five factors are (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties. Id. We held that Simmons's contacts with Arkansas created specific jurisdiction. Id. Specifically, we stated that
the facts demonstrating contacts between the parties are explained as follows. From 2012 to 2015, Simmons printed and distributed catalogs in the State of Arkansas, and purchased newspaper advertising in Arkansas newspapers, as well as television advertisements. Importantly, Simmons hosted a contest that targeted Arkansas residents for the largest deer harvested in Arkansas. Simmons circulated a total of 483,700 print advertisements and a total of 1,696,704 copies of the catalog. However, the relation of the cause of action to the contacts is weak. This cause of action arises out of a premises-liability suit that occurred in Louisiana; it is not directly connected to Simmons's advertisements. As discussed above, however, the proper question is not where the plaintiff experienced a particular injury or effect, but whether the defendant's conduct connects him to the forum in a meaningful way. Walden [v. Fiore , 571 U.S. 277, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014) ]. Moreover, Arkansas does have a strong interest in providing a forum for its residents, particularly for those residents who act in response to solicitation from outside states. Lastly, Simmons is located roughly thirty miles *193 away from the forum, so the argument regarding an inconvenient forum is weak.
Id. at 7, 511 S.W.3d at 887-88 (footnote omitted). Accordingly, we held that even though the relationship between Simmons's contacts with Arkansas and the cause of action was weak, the other four factors weighed in favor of exercising specific jurisdiction over Simmons.
As earlier stated, following the issuance of Lawson I , Simmons filed a petition for review with our supreme court, and our supreme court denied it. Simmons then filed a petition for a writ of certiorari with the United States Supreme Court, and the Supreme Court vacated our opinion in light of its decision in Bristol-Myers . See Simmons Sporting Goods, Inc. v. Lawson , --- U.S. ----, 138 S.Ct. 237, 199 L.Ed.2d 2 (Mem.) (2017).[1]
In Bristol-Myers , a group of plaintiffs consisting of 86 California residents and 592 residents from 33 other States brought a mass tort action in California state court against Bristol-Myers Squibb (BMS), a large pharmaceutical company. --- U.S. ----, 137 S.Ct. 1773, 198 L.Ed.2d 395. The plaintiffs asserted a variety of state-law claims based on injuries allegedly caused by Plavix, a drug manufactured by BMS. Id. BMS is incorporated in Delaware and headquartered in New York. Id. Five of the company's research and laboratory facilities, which employ around 160 employees, are located in California. Id. BMS also employs about 250 sales representatives in California and maintains a small state-government advocacy office in Sacramento. Id.
BMS challenged the California court's exercise of jurisdiction over the company as to the claims of the nonresident plaintiffs, none of whom asserted any injury from the drug in California or any other connection to the state. Id. Applying a "sliding-scale approach to specific jurisdiction," the California Supreme Court held that BMS's contacts with California created specific jurisdiction. Id. at 1778.[2] Under this approach, "the more wide ranging the defendant's forum contacts, the more readily is shown a connection between the forum contacts and the claim." Id. The California Supreme Court concluded that BMS's extensive contacts with California permitted the exercise of specific jurisdiction "based on a less direct connection between BMS's forum activities and plaintiffs' claims than might otherwise be required." Id. at 1779.
BMS appealed the decision to the United States Supreme Court, and the Court agreed with BMS that the California court's exercise of specific jurisdiction over *194 the company as to those claims brought by the nonresident plaintiffs violated the Due Process Clause of the Fourteenth Amendment. Id. The Court found that California's "sliding scale approach" was difficult to "square with [Supreme Court] precedents." Id. at 1781. Specifically, the Court stated that
[u]nder the California approach, the strength of the requisite connection between the forum and the specific claims at issue is relaxed if the defendant has extensive forum contacts that are unrelated to those claims. Our cases provide no support for this approach, which resembles a loose and spurious form of general jurisdiction. For specific jurisdiction, a defendant's general connections with the forum are not enough. As we have said, a corporation's continuous activity of some sorts within a state ... is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.
Id. (internal quotations and citations omitted).
The Court clarified that
[i]n order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.' Goodyear[ Dunlop Tires Operations, S.A. v. Brown] , 564 U.S.[ 915], 919, 131 S.Ct. 2846[, 180 L.Ed.2d 796 (2011) ] (internal quotation marks and brackets in original omitted). When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State. See id. at 931, n.6, 131 S.Ct. 2846 ('[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales').
Id. at 1781. The Court found that "[w]hat is needed-and what is missing here-is a connection between the forum and the specific claims at issue." Id. The nonresident plaintiffs had not shown that they were prescribed or had purchased or had ingested the drug in California. Id. Nor were any of the nonresident plaintiffs injured by the drug in California. Id. In short, the Supreme Court reasoned, the nonresident plaintiffs' claims did not comport with due process because none involved any activity or occurrence that took place in California. Id. The Court further explained that
[i]n determining whether personal jurisdiction is present, a court must consider a variety of interests. These include 'the interests of the forum State and of the plaintiff in proceeding with the cause in the plaintiff's forum of choice.' Kulko v. Superior Court of Cal., City and County of San Francisco , 436 U.S. 84, 92, 98 S.Ct. 1690, 56 L.Ed. 2d 132 (1978) ; see Daimler [AG v. Bauman , 571 U.S. 117, 139 n.2, 134 S.Ct. 746 (2014) ]; Asahi Metal Industry Co. v. Superior Court of Cal., Solano Cty. , 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed. 2d 92 (1987) ; World-Wide Volkswagen[ Corp. v. Woodson] , 444 U.S.[ 286, ]292, 100 S.Ct. 559[, 62 L.Ed.2d 490 (1980) ]. But the 'primary concern' is 'the burden on the defendant.' Id. , at 292, 100 S.Ct. 559. Assessing this burden obviously requires a court to consider the practical problems resulting from litigating in the forum, but it also encompasses the more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in the claims in question. As we have put it, restrictions on personal jurisdiction 'are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States.'
*195 Hanson v. Denckla , 357 U.S. 235, 251, 78 S.Ct. 1228, 2 L.Ed. 2d 1283 (1958). '[T]he States retain many essential attributes of sovereignty, including, in particular, the sovereign power to try causes in their courts. The sovereignty of each State ... implie[s] a limitation on the sovereignty of all its sister States.' World-Wide Volkswagen , 444 U.S., at 293, 100 S.Ct. 559. And at times, this federalism interest may be decisive. As we explained in World-Wide Volkswagen , '[e]ven if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment.' Id. , at 294, 100 S.Ct. 559.
Id. at 1780-81.
The Supreme Court stated that its decision in Walden v. Fiore , 571 U.S. 277, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014), illustrated the connectedness requirement. In that case, Nevada plaintiffs sued an out-of-state defendant for conducting an allegedly unlawful search of the plaintiffs while they were in Georgia preparing to board a plane bound for Nevada. Id. The Supreme Court held that the Nevada courts lacked specific jurisdiction because the "relevant conduct occurred entirely in Georgia, and the mere fact that [the] conduct affected plaintiffs with connections to the forum state does not suffice to authorize jurisdiction." Id. at 1126. The Court pointed out that as in Walden and the case at hand, "all the conduct giving rise to the ... claims occurred elsewhere." Bristol-Myers , 137 S.Ct. at 1782.
We now turn to the merits of the instant case. On remand, Lawson argues that Bristol-Myers does not warrant modification of our decision in Lawson I . She asserts that in Lawson I , we cited Supreme Court precedent that Bristol-Myers did not overturn. She further argues that Bristol-Myers is factually inapposite to this case and that the Eighth Circuit five-factor test that our supreme court uses in personal-jurisdiction cases is unaffected by Bristol-Myers .
Simmons argues that Bristol-Myers mandates modification of our decision in Lawson I because Bristol-Myers requires an affiliation between the forum and the underlying controversy, and in Lawson I , we held that "the relation of the cause of action to the contacts is weak." Thus, Simmons asserts that this court has already determined that no relationship exists, and as a result, we must hold that no specific jurisdiction exists. Simmons argues that in light of Bristol-Myers , this court cannot consider the other four factors from the Eighth Circuit test in order to create specific jurisdiction when the connectedness factor is lacking. It points out that the Supreme Court rejected California's sliding-scale test, which permitted California courts to consider a defendant's nonrelated contacts when determining specific jurisdiction.
Simmons's argument is well taken, and we hold that Arkansas does not have specific jurisdiction over Simmons in light of the Supreme Court's decision in Bristol-Myers . Even though the facts of Bristol-Myers are distinct from the facts here, the Supreme Court's rationale in rejecting California's sliding-scale test in Bristol-Myers implicates our application of the Eighth Circuit five-factor test in Lawson I . In Lawson I , we held that there was little affiliation between the forum and the underlying controversy. We stated that "the *196 relation of the cause of action to the contacts is weak. This cause of action arises out of a premises-liability suit that occurred in Louisiana; it is not directly connected to Simmons's advertisements." Lawson I , 2017 Ark. App. 44, at 6, 511 S.W.3d at 887-88. However, we applied the other factors from the Eighth Circuit five-factor test-the nature and quality of Simmons's contacts with Arkansas, the quantity of such contacts, the interest of Arkansas in providing a forum for its residents, and the convenience of the parties-and concluded that specific jurisdiction existed. That analysis of specific jurisdiction is improper under Bristol-Myers . Bristol-Myers prevents a court from exercising specific jurisdiction when there is no connection between the cause of action and the forum. In other words, this court cannot use the other factors to create specific jurisdiction. We recognize that in Lawson I , we relied on Supreme Court precedent that Bristol-Meyers did not overrule. However, in Bristol-Myers , the Supreme Court mandated a "straightforward application ... of settled principles of personal jurisdiction." See Bristol-Myers , 137 S.Ct. at 1783.
Accordingly, because we found that there was no affiliation between Arkansas and the underlying controversy in Lawson I , and because Bristol-Myers requires such an affiliation for specific jurisdiction to exist, we must affirm the circuit court's dismissal of Lawson's complaint for lack of personal jurisdiction.
Affirmed.
Virden, Glover, and Hixson, JJ., agree.
Vaught and Murphy, JJ., dissent.

Specifically, the Supreme Court issued a grant, vacate, and remand (GVR) order. The Supreme Court has stated that "a GVR order conserves the scarce resources of th[e] Court that might otherwise be expended on plenary consideration, assists the court below by flagging a particular issue that it does not appear to have fully considered, assists th[e] Court by procuring the benefit of the lower court's insight before [it] rule[s] on the merits, and alleviates the '[p]otential for unequal treatment' that is inherent in [the Court's] inability to grant plenary review of all pending cases raising similar issues." Lawrence v. Chater , 516 U.S. 163, 167, 116 S.Ct. 604, 133 L.Ed.2d 545 (1996).

The California trial court initially found that BMS's contacts supported general jurisdiction, and the California Court of Appeals denied review of that decision. However, after the United States Supreme Court issued its decision in Daimler AG v. Bauman , 571 U.S. 117, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014), the California Supreme Court vacated the appellate court's mandate and referred the case back to the court of appeals. On remand, the court of appeals found that BMS's contacts supported specific jurisdiction. The California Supreme Court then reviewed the court of appeals's decision.